LIBERTY NATIONAL BANK OF FREMONT, APPELLEE, *v.* GREINER ET AL., APPELLANTS.

(No. S-77-20—Decided July 7, 1978.)

*Mr. Stephen E. Hagerman,* for appellants.
*Mr. Alexander Hyzer IV,* for appellee.

POTTER, P. J. On September 7, 1973, defendants-appellants executed and delivered to plaintiff-appellee their promissory note in the amount of $56,419.56. The note was a consolidation of several business loans made by appellee to appellants and was secured by security agreements covering thirteen used trucks. Appellants defaulted on payments of both principal and interest and, with the knowledge and consent of appellant Gary Greiner, appellee took possession of eleven of the used trucks in September of 1974.[1] Appellee sold seven of the trucks at an auction and the remaining four vehicles were sold upon written bids. The amount received from the sale less certain expenses was applied to reduce appellants' indebtedness. Subsequently, appellee sought a deficiency judgment for the remaining balance of the promissory note and was granted said judgment in the amount of $39,515.20 by the Sandusky County Common Pleas Court.[2]

---

[1] Appellants obtained the consent of the bank and sold two of the trucks privately before the bank repossessed the other vehicles.

[2] Initially appellee secured a judgment against appellants on the promissory note which contained a warrant of attorney. That judgment was vacated upon appellants' motion and the action proceeded to trial before the court.

Prior to the entry of the judgment, the court, pursuant to Civ. R. 52, made findings of fact and conclusions of law. The conclusions of law pertinent to this appeal are:

"1. Plaintiff gave the defendants proper notice of its intended disposition of the collateral under Section 1309.47(C) of the Ohio Revised Code.

"2. Plaintiff's disposition of the collateral was commercially reasonable under Section 1309.47(C) of the Ohio Revised Code.***

"4. Plaintiff would be entitled to this deficiency judgment if it had failed to give defendants proper notice of its intended disposition of the collateral and/or failed to dispose of the collateral in a commercially reasonable manner because the deficiency represented the difference in the value of the collateral and the defendants' obligation to plaintiff."

Appellants now appeal to this court and file the following assignments of error:

"1. The trial court erred in finding that the plaintiff gave proper notice of its intended disposition of the collateral under Section 1309.47(C) of the Ohio Revised Code.

"1-A. The trial court erred in finding that any notice was given to defendant, Shirley Greiner.

"2. The trial court erred in finding that the disposition of the collateral was commercially reasonable under Section 1309.47(C) of the Ohio Revised Code.

"3. The trial court erred in finding that the plaintiff was entitled to a deficiency judgment."

Upon taking possession of the trucks, appellee was bound by R. C. 1309.47(C), which provides:

"Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, and except in the

case of consumer goods to any other person who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state or who is known by the secured party to have a security interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale."

Appellee concedes that the collateral involved herein was not such as to exempt appellee from the reasonable notice requirements of R. C. 1309.47(C). Appellee also concedes that no notice of the intended sale was given by it to appellant Shirley Greiner, wife of appellant Gary Greiner and a co-signer on the promissory note, who was entitled to separate notice. *Cf. Modern Finance Co.* v. *Enmen* (1970), 25 Ohio Misc. 216, a decision under R. C. 1319.07, now repealed.

Appellant Gary Greiner did receive some notice of the intended disposition of the collateral when appellee repossessed the trucks and again when appellee sent a formal notice to Gary Greiner by certified mail. Appellants contend, however, that the notice given by appellee was inadequate and failed to comply with the notice requirements in R. C. 1309.47(C). Only the notice which was hand delivered to Gary Greiner when the trucks were repossessed, on or about September 9, 1974, was made part of the record. There is no contention that the notice sent by certified mail and received on October 7, 1974, differed in any respect from that which was hand delivered to appellant. In pertinent part, the notice read as follows:

"You are hereby given notice that the property secured by the financing statement or security agreement bearing the file number shown above will be sold on the tenth (10) day after receipt of this letter at Fremont, Ohio, and the minimum price for which the secured property may be sold is $4,000."

The notice also described the property, informed appellant that he would be held liable for any deficiency, and notified appellant on the last line of the notice letter that, "Any person may appear at the time and place of sale and bid on said property."

A reading of the first quoted portion of the notice would indicate that the vehicles were to be sold through a private sale. The information therein conveyed, *i.e.*, the date after which the property would be sold, would satisfy the notice requirements of R. C. 1309.47(C) for a private sale. The last line of the notice letter, however, indicates that a public sale with competitive bidding would be held. Thus, aside from any other deficiency, the notice was patently ambiguous as to what type of sale would be held. In fact, two different methods of sale were utilized by appellee. Seven of the vehicles were sold by auction on October 23, 1976. Appellee advertised this sale in several area newspapers under the caption "Public Auction." The remaining vehicles were not at the place where the auction was held and were sold upon written bids. The date of that sale was not established.

Appellee argues that although the methods of sale differed, both the auction and the sale upon written bids were private sales. Appellee contends that despite the fact that the auction was advertised as public and the public did appear, the auction was a private sale because the auction was "with reserve."

We do not agree. R. C. 1302.41(C) provides that auctions are with reserve unless otherwise explicitly specified and the drafters' comments to that section state that an auction with reserve is the normal procedure. The term "public sale" is not defined in the code. Cases interpreting that term generally, and as used in the Uniform Commercial Code, have held that several conditions, such as publicity, competitive bidding and invitation to the public must be met before a sale can be classified as a public sale. The case law does not indicate that the distinction between auctions with reserve and auctions without reserve is relevant to the determination of the public or private character of the sale. See Annotation, 4 A.L.R. 2d 575. The sale held by appellee on October 23, 1976, was advertised as open to the general public, the public did attend and competitive bidding was held. We find, therefore, that this auction was a public sale as the term is used in R. C. 1309.47(C).

R. C. 1309.47(C) requires that the secured party send the debtor reasonable notification of the time and place of the public sale. Clearly, the written notice received by appellant

did not fulfill this requirement. The notice did not specify the time of the sale and the designation of Fremont, Ohio, as the place of the sale is too broad to constitute effective notice of the location. The notice of the location of the sale provided for in R. C. 1309.47 contemplates a reasonably precise designation of the place where the sale is to be held. *Cf. Ohio Credit Corp.* v. *Harbour* (1970), 53 Ohio Ops. 2d 38, a decision under R. C. 1319.07, now repealed. We find, therefore, that the written notice received by appellant Gary Greiner was insufficient to comply with the mandate of R. C. 1309.47. We also find that the general advertisements of the sale placed by appellee in the classified sections of area newspapers did not constitute notice to appellants of the time, place and date of sale. See *Morris Plan Co. of Bettendorf* v. *Johnson* (Ill. 1971), 271 N.E. 2d. 404.

As previously noted, in the case of a private sale R. C. 1309.47 requires only that the debtor be informed of the date after which the property will be sold. Appellee's sale of the four trucks upon written bids was a private sale. While the written notice received by appellant did contain the necessary information, when read as a whole the notice indicated that a public sale would be held. We find that the combination of the form notice for private sale with the language indicating a public sale would be held is inherently misleading and, as such, does not constitute proper notice of a private sale, pursuant to R. C. 1309.47(C). See *Delay First Natl. Bank & Trust Co.* v. *Jacobson Appliance Co.* (Neb. 1976), 243 N.W. 2d. 745. We find that assignments of error 1 and 1-A are well taken.

Our holding that appellee failed to comply with the notice requirements of R. C. 1309.47(C) affects both the second and third assignments of error. We find that these remaining assignments of error are so related that our determination of the third assignment of error must precede our consideration of the second assignment of error.

In their third assignment of error, appellants contend that a creditor who fails to comply with the notice requirements of R. C. 1309.47(C) cannot obtain a deficiency judgment. The Uniform Commercial Code does not specifically address this issue and the question is one of first impression in Ohio. Decisions from other jurisdictions based on

basically the same statute have not been uniform. See Annotation, 59 A.L.R. 3d 401. Many courts have held that compliance with the code requirements on disposition of collateral is a condition precedent to recovery of a deficiency judgment and that the creditor's failure to give the required notice is an absolute bar to recovery of a deficiency judgment. See *Skeels* v. *Universal C.I.T. Credit Corp.* (W.D. Pa. 1963), 222 F. Supp. 696, modified on other grounds, 335 F. 2d 846; *Herman Ford-Mercury, Inc.* v. *Betts* (Iowa 1977), 251 N.W. 2d 492; *Gurwitch* v. *Luxurest Furniture Mfg. Co.* (1975), 233 Ga. 934, 214 S.E. 2d 373; *Bank of Gering* v. *Glover* (1974), 192 Neb. 575, 223 N.W. 2d 56; *Camden National Bank* v. *St. Clair* (Me. 1973), 309 A. 2d 329; *Aimonetto* v. *Keepes* (Wyo. 1972), 501 P. 2d 1017; *Washington* v. *First National Bank of Miami* (Fla. App. 1976), 332 So. 2d 644; *Atlas Thrift Co.* v. *Horan* (1972), 27 Cal. App. 3d 999, 104 Cal. Rptr. 315; *Leasco Data Processing Equip. Corp.* v. *Atlas Shirt Co.* (1971), 66 Misc. 2d 1089, 323 N.Y.S. 2d 13.

In its fourth conclusion of law, the trial court in the case *sub judice* apparently adopted a different approach which has also been accepted in other jurisdictions. Under this approach the creditor's failure to comply with the notice provisions of R. C. 1309.47(C) does not automatically bar the recovery of a deficiency judgment; however, the creditor's failure to prove compliance with code requirements raises the presumption that the value of the collateral was equal to the amount of the debt and places the burden on the creditor to prove the fair market value of the collateral by evidence other than the price obtained upon resale. If the creditor fails to overcome the presumption, no deficiency judgment is allowed. See *Levers* v. *Rio King Land & Investment Co.* (Nev. 1977), 560 P. 2d 917; *Walker* v. *V. M. Box Motor Co., Inc.* (Miss. 1976), 325 So. 2d 905; *Clark Leasing Corp.* v. *White Sands Forest Products, Inc.* (1975), 87 N.M. 451, 535 P. 2d 1077; *Universal C.I.T. Credit Co.* v. *Rone* (1970), 248 Ark. 665, 453 S.W. 2d 37; *Hodges* v. *Norton* (1976), 29 N.C. App. 193, 223 S.E. 2d 848. A related line of cases allows the creditor who failed to give proper notice to recover the deficiency subject to a credit or setoff for the loss caused by the creditor's noncompliance. The amount of damages is presumed equal to the amount of the deficiency unless the creditor proves otherwise. See *Com-*

*mercial Credit Corp.* v. *Holt* (Tenn. App. 1975), 17 U.C.C. Rpt. Serv. 316.

While there is respectable authority which supports the trial court's finding, we hold that the better and more reasonable construction of R. C. 1309.47(C) requires us to adopt the view that a creditor's full compliance with the statutory notice requirements is a condition precedent to the recovery of a deficiency judgment. We hold, therefore, that the creditor's failure to prove that a proper notice of disposition was sent to the debtor operates as a complete defense in a deficiency action brought by the creditor. While R. C. 1309.50 does provide certain remedies for the debtor whose creditor has not proceeded in accordance with code rules on the disposition of collateral, that provision clearly contemplates affirmative relief and has no application to defenses. Therefore, the courts' traditional equitable power to deny deficiency judgments may be implemented pursuant to R. C. 1301.03. See *Camden National Bank* v. *St. Clair, supra; Atlas Thrift Co.* v. *Horan, supra;* and *Leasco Data Processing Equip. Corp.* v. *Atlas Shirt Co., supra.*

The notice provisions of R. C. 1309.47(C) were intended to afford the debtor an opportunity to bid on the collateral and to solicit any available bidders in order to insure a full and fair price and minimize the possibility of a deficiency. See *Herman Ford-Mercury Inc.* v. *Betts, supra.* The code's notice provisions are minimal; requiring compliance with them before any deficiency judgment can be obtained will not impose an undue burden on creditors. See II Gilmore, Security Interests in Personal Property 1261, Section 44.9.4 (1965). We find the reasoning in *Skeels* v. *Universal C.I.T. Credit Corp., supra,* persuasive. It states, in part, at 702:

"It seems to this Court, however, that to permit recovery by the security holder of a loss in disposing of collateral when no notice has been given, permits a continuation of the evil which the Commercial Code sought to correct. The owner should have an opportunity to bid at the sale. It was the secret disposition of collateral by chattel mortgage owners and others which was an evil which the Code sought to correct. It is important to note in the instant case that there was no waiver of the right to notice on disposition of collateral. A security holder who disposes of collateral without notice

denies to the debtor his right of redemption which is provided him in Section 9-506."

We find that appellee failed to prove that proper notice was sent to the debtors in accordance with the mandate of R. C. 1309.47(C) and because proof of compliance with such notice requirements is a condition precedent to the recovery of a deficiency judgment, we hold that the trial court committed prejudicial error in granting appellee the deficiency judgment. Appellants' third assignment of error is, therefore, well taken.

Appellants' second assignment of error concerns the determination of the commercial reasonableness of the disposition of the collateral and raises the issue of the relationship between that determination and a finding that the creditor failed to comply with the notice provision of R. C. 1309.47(C). R. C. 1309.47(C) requires that "every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable." The term "commercially reasonable" is not clearly defined in the code, although R. C. 1309.50(B) does provide some basic rules to assist in the determination of commercial reasonableness. In pertinent part, that section provides:

"The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefore or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold, he has sold in a commercially reasonable manner."

Further, the creditor's conduct in disposing of the collateral should be evaluated in light of the obligation to act in good faith imposed by R. C. 1301.09. See *Northern Financial Corp.* v. *Kesterson* (1971), 31 Ohio App. 2d. 256.

The code does not specifically define the relationship between the notice provisions of R. C. 1309.47(C) and the requirement that the disposition of the collateral be made in a commercially reasonable manner. Some courts have held that

the "commercially reasonable" requirement is general in scope and effect and is not mutually exclusive of the notice requirement. These courts consider compliance with the notice requirement as one of several elements bearing on the question of commercial reasonableness. See *e.g. Mallicoat* v. *Volunteer Finance & Loan Corp.* (Tenn. App. 1966), 415 S.W. 2d 347. Other courts have treated the issues of notice and commercial reasonableness as related but independent requirements. See *e.g. Beneficial Finance Co.* v. *Reed* (Iowa 1973), 212 N.W. 2d 454. We find that the latter view best reflects the language employed by the drafters and best effectuates the purposes and policies behind the two requirements. While the issue of notice to the debtor should be considered in the determination of commercial reasonableness, that factor alone is not controlling.

In the case *sub judice,* appellee hired a qualified appraiser, sufficiently advertised the sale to the public, properly attempted to obtain the highest possible bids for the collateral, and selected an auctioneer who conducted the sale fairly. Therefore, we find that except for the failure to give the debtors proper notice, appellee otherwise complied with its obligations of good faith and commercial reasonableness. To that extent, the second assignment of error is not well taken. However, because we have found that proper notice is an independent requirement, our determination that the sale was otherwise conducted in a commercially reasonable manner does not alter the effect of appellee's failure to send the debtors proper notice of the disposition. Where, as in the case *sub judice,* the creditor fails to comply with the notice provisions of R. C. 1309.47(C), the creditor cannot establish a condition precedent to recovery and, therefore, cannot obtain a deficiency judgment even if the requirement of commercial reasonableness has otherwise been met.

On consideration whereof, the court finds substantial justice has not been done the parties complaining, and the judgment of the Sandusky County Common Pleas Court is reversed.

*Judgment reversed.*

BROWN AND WILEY, JJ., concur.

WILEY, J., retired, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.