**In re Forest C. LUCAS, aka: Forest C. Lucas, Jr., aka: F.C. Lucas, aka: Whitey Lucas, Debtor.**

**Bankruptcy No. 2–82–02520.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Dec. 23, 1982.

**6.** 11 U.S.C.A. § 349 (West 1979).

John I. Peters, Pataskala, Ohio, for debtor.

Timothy E. Grady, Columbus, Ohio, for Citicorp Acceptance Co., Inc.

Frank Pees, Worthington, Ohio, Trustee.

## ORDER ON OBJECTION TO CLAIM

THOMAS M. HERBERT, Bankruptcy Judge.

This cause came on to be heard upon Debtor's Objection To Allowance Of Claim Of Citicorp, filed on October 12, 1982. A hearing was held on October 28, 1982, at which time the matters in issue were presented to the court.

Debtor's petition for relief under Chapter 13 of Title 11, United States Code, was filed on July 8, 1982. In his Chapter 13 statements, debtor lists Citicorp as a creditor in the amount of $13,323.14, based upon a deficiency from the sale of a 1979 Allegro motor home (Allegro), and states that the claim is "strongly disputed." Debtor alleges that Citicorp failed to comply with the Uniform Commercial Code in the sale of the Allegro. Citicorp's Proof of Claim for the amount in dispute was filed on August 31, 1982. Debtor's Chapter 13 plan has not been confirmed.

On November 15, 1982, Citicorp and Debtor submitted a Stipulation of Facts. The parties agree that by virtue of a retail installment contract dated November 19, 1979, debtor agreed to pay Citicorp $54,-519.00, with the amount of $30,172.00 being financed for 120 months at $454.33 per month. Debtor made six payments totalling $2,625.98 and then fell into default. On or about October 8, 1980, debtor voluntarily surrendered the Allegro to Citicorp in an agreed repossession.

On October 27, 1980, Citicorp gave debtor written notice that it intended to offer the Allegro for public sale on November 7, 1980, and that the vehicle would "be sold at a price no less than" $31,725.64. At the sale, however, no bid was offered which equalled that minimum amount, so the Allegro remained in the possession of Citicorp. For

approximately 10 months after the attempted sale, Citicorp endeavored to sell the Allegro through advertising and display at recreational vehicle dealers throughout Ohio. Finally, on September 24, 1981, the vehicle was sold for $20,853.00, an amount which exceeded the Allegro's appraised wholesale value as listed in the NADA "black book" at that time, but which left the current deficiency balance sought by Citicorp in the amount of $13,323.14.

Debtor was sent no notice of the sale on September 24, 1981. Moreover, in spite of debtor's verbal requests for information, Citicorp gave debtor no written statement of sale or preparation costs, and did not provide debtor with the amount of the deficiency balance until filing its proof of claim in this proceeding.

At the hearing, debtor testified that he was familiar with motor homes, that they must receive proper care to avoid rapid depreciation, that 10 months was too long a time for the Allegro to have been on the market, that if he had known Citicorp was going to sell the Allegro for $20,853.00 he would have appeared at the sale and tried to protect his arrearage, that he had friends in the motor home business whom he would have informed of the sale, and that he knew of no mechanical problems with the Allegro which would have lessened its saleability.

■ In briefs and memoranda, the parties have presented various issues for resolution by the court. Citicorp contends, *inter alia,* that debtor failed to present probative evidence to overcome the *prima facie* validity of Citicorp's claim for the deficiency. In support of this position, Citicorp dismisses the usefulness of debtor's testimony with the view that such testimony "presented only a biased and unqualified opinion regarding the disposition of the collateral." The question of bias goes to the weight of the testimony, not its legal sufficiency. Debtor's opinion (and qualifications to render it) was admissible evidence, subject to the suspicion of bias which naturally accompanies such testimony. Viewing the entire record, the court finds that the *prima facie* evidence of validity accorded Citi-

corp's instant claim was successfully overcome.

■ Citicorp urges also that debtor's failure to appear pursuant to the first notice of sale estops him from raising the question of a failure of proper notice of the eventual sale. Barring statutory abridgement of equitable doctrine, and if the latter event had resulted in a sale at or near the minimum bid advertised in the first and only notice, Citicorp's position could be well taken. The doctrine of estoppel, however, does not operate to equitably bar assertion of a remedy which has not been previously available. Moreover, Citicorp could not have been reasonably misled, by debtor's absence at the first sale, into believing that debtor was not interested in and would not attend the subsequent sale. The marked difference between the first-sale minimum bid and the price accepted at the eventual sale remove from this cause the application of estoppel advanced by Citicorp.

■ Both parties raise the issue of whether Citicorp was required to have served debtor with proper prior notice of the sale held on September 24, 1981. R.C. 1317.071 sets out the methods by which retail sellers in Ohio may take security interests in property sold. It is apparently conceded by the parties that the retail installment contract at bar conforms to the requirements of that statute.

R.C. 1317.16 provides:

(A) A secured party whose security interest is taken pursuant to section 1317.071 [1317.07.1] of the Revised Code may, after default, dispose of any or all of the collateral *only as authorized by this section.*

(B) *Disposition of the collateral shall be by public sale only. Such sale* may be as a unit or in parcels and the method, manner, time, place, and terms thereof shall be commercially reasonable. At least ten days prior to sale the secured party shall send notification of the time and place of *such sale* and of the minimum price for which such collateral will be sold, together with a statement that

the debtor may be held liable for any deficiency resulting from *such sale,* by certified mail, return receipt requested, to the debtor at his last address known to the secured party, and to any persons known by the secured party to have an interest in the collateral. In addition, the secured party shall cause to be published, at least ten days prior to *the sale,* a notice of *such sale* listing the items to be sold, in a newspaper of general circulation in the county where *the sale* is to be held.

(C) *Except as modified by this section,* section 1309.47 of the Revised Code governs disposition of collateral by the secured party. (Emphasis added).

As can be seen, R.C. 1317.16 is the controlling statute governing disposition of collateral in Ohio.

R.C. 1309.47(C) speaks to the requirement for debtor notification of sale as follows:

Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, *reasonable notification of the time and place of any public sale* or reasonable notification of the time after which any private sale or other intended disposition is to be made *shall be sent by the secured party to the debtor* if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent. In other cases, notification shall be sent to any other secured party from whom the secured party has received, before sending his notification to the debtor or before the debtor's renunciation of his rights, written notice of a claim of an interest in the collateral.... (Emphasis added).

In the Official Comment following R.C. 1309.47 the following statement appears:

"Reasonable notification" is not defined in this Chapter; at a minimum it must be sent in such time that persons entitled to receive it will have sufficient time to take appropriate steps to protect their interests by *taking part in the sale* if they so desire. (Emphasis added).

The import of the above quotations leaves little doubt that the Ohio General Assembly intended that repossessing creditors give debtors reasonable notice before selling collateral at a public sale. "Reasonable" notice necessarily mandates notice of the sale which results in a transferrance of collateral ownership. It is not sensible to conclude that notice of a sale which never occurred can be reasonable notice of a sale held 10 months later, particularly in the face of the instant controlling statutory language.

In *Spillers v. First Nat. Bk. of Arenzville,* 81 Ill.App.3d 199, 36 Ill.Dec. 477, 400 N.E.2d 1057 (1980), the court discusses the notice requirements of the Uniform Commercial Code. At pp. 204–205, 36 Ill.Dec. 477, 400 N.E.2d 1057 of the opinion appears the following:

As to the crane, there is no doubt that petitioner initially received notice of sale. This was the predicate for the bid made by his corporation which was rejected by respondent. Thereafter, no other notice was given. Respondent refers us to an "agreement" of February 2, 1978, regarding notice. However, so far as the record discloses, such a purported agreement is so ambiguous that we are unable to say that it did, or did not, exist. From March 22, 1978, the date of petitioner's corporation's bid, until April 27, 1978, when the crane was sold, the petitioner had no way of knowing the status of the matter. Undoubtedly he knew that a sale impended but under § 9–504(3), the burden was on respondent to keep petitioner apprised of developments. The word "any" as used in § 9–504(3), when referring to private sales has the clear meaning of "all and every." In its basic sense "any" refers to an indefinite number, as "any person may attend court." Webster's

New World Thesaurus (1974 edition), gives as synonyms for the word, "either, whatever, any sort, any kind, any one, in general, each some, several, each and every, all, one and all." The same source lists as antonyms for the word, "only, one, single."

It therefore became the duty of respondent to notify petitioner of all and every proposed private sale, or sales. Simply being aware of an impending sale is insufficient. (*Morris Plan v. Johnson Co.* (1971), 133 Ill.App.2d 717, 271 N.E.2d 404 [9 UCC Rep. 728].)

An analogous case is *DeLay First National Bank v. Jacobson Appliance* (1976), 196 Neb. 398, 243 N.W.2d 745 [19 UCC Rep. 994]. In that case there were several successive private sales of collateral under the provisions of the Code. The Supreme Court of Nebraska held that the failure of notice as to each sale was a violation of the notice provisions of § 9–504(3). We follow the Morris Plan and DeLay courts and hold that petitioner did not receive reasonable notification of the sale within the meaning of the Code (Ill.Rev.Stat.1977, ch. 26, par. 9–504(3)).

See, also, *Nat. Blvd. Bk. of Chicago v. Jackson,* 92 Ill.App.3d 928, 48 Ill.Dec. 327, 416 N.E.2d 358 (1981).

Failure to send a subsequent notice of an impending later sale was before the court in *Hertz Comm. Leasing Corp. v. Dynatron, Inc.,* 37 Conn.Sup. 7, 427 A.2d 872, 30 U.C.C. Rep.Serv. (Callaghan) 770, 775 (Conn.Superior Ct.1980). The judge noted:

> ... The blunt fact is that the machine, as seen previously, was sold by plaintiff to a buyer for $500.00, in May, 1978—about nine months after the date specified in the original notice of sale. So far as the record discloses, defendant never received a notice of the 1978 sale.

> In the opinion of the court, whether the sale in May, 1978, be termed a public or private sale, plaintiff's failure to notify defendant, relative thereto, is a crucial non-compliance with the mandate of § 9–504.

It is the court's conclusion that Citicorp's failure to provide reasonable notice to debtor prior to the sale held on September 24, 1981 constituted a violation of the notice requirements of R.C. 1317.16 and R.C. 1309.-47(C).

Debtor contends that not every aspect of the sale of the Allegro was commercially reasonable, as required by R.C. 1309.47(C) and R.C. 1317.16, *supra.* As hereinbefore noted, however, the record establishes that Citicorp, for a period of approximately 10 months, caused the Allegro to be displayed and advertised for sale. The motor home was placed at recreational vehicle dealers' lots throughout Ohio. When the sale finally occurred, the price obtained exceeded the appraised wholesale value of the vehicle. Taking all of this, as well as debtor's testimony, into consideration, the court finds that the method, manner, time, place, and terms of the sale were commercially reasonable. See R.C. 1309.50(B).

The final issue for resolution is the effect of Citicorp's failure to notify debtor of the sale held September 24, 1981. *In re Radford,* 19 B.R. 37 (Bkrtcy.S.D.Ohio 1982), holds that such a failure "results in the denial of a deficiency judgment against a debtor." *Id.* at 38. In that case, the court noted that where the creditor had notified the debtor of a sale to be held February 13, 1981, and no sale was held, the creditor complied with "the detailed requirements" of R.C. 1317.16 in notifying the debtor a second time, where a sale was to be held on March 6, 1981, which resulted in disposition of the collateral.

In *Liberty Bank v. Greiner* (1978), 62 Ohio App.2d 125, 405 N.E.2d 317, the syllabus states:

> Compliance with the notice requirements of R.C. 1309.47(C) is a condition precedent to the recovery of a deficiency judgment and a creditor's failure to comply with such requirements is an absolute bar to the recovery of a deficiency judgment, even though the creditor's disposition of the collateral was otherwise commercially reasonable.

See, also, *Spillers v. First Nat. Bk. of Arenzville, supra; Motor Car Co. v. Textile-Tech* (1981), 68 Ohio Misc. 25, 428 N.E.2d 882.

The court finds the citations and reasoning employed by Presiding Judge Potter in *Greiner, supra,* compelling under the facts at bar. "A creditor's full compliance with the statutory notice requirements is a condition precedent to the recovery of a deficiency judgment." *Id.* 62 Ohio App.2d at 131, 405 N.E.2d 317.

In view of the foregoing, debtor's objection to the claim of Citicorp in the amount of $13,323.14 is sustained, and the claim is disallowed.

IT IS SO ORDERED.