**John R. BUTZ, Trustee in Bankruptcy, Plaintiff,**

**v.**

**SOCIETY NATIONAL BANK OF the MIAMI VALLEY, Defendant.**

**In the Matter of Robert Leon CLARK, Judy Denise Clark, Debtors.**

**John R. BUTZ, Trustee in Bankruptcy, Plaintiff,**

**v.**

**SOCIETY NATIONAL BANK OF MIAMI VALLEY, Defendant.**

**In the Matter of Richard S. LATHAM, AKA Richard Sylvester Latham, Shirley I. Latham, AKA Shirley Iline Latham, Debtors.**

Adv. Nos. 3–82–0571, 3–82–0572.
Bankruptcy Nos. 3–82–00546, 3–82–0572 and 3–82–01281.

United States Bankruptcy Court, S.D. Ohio, W.D.

March 9, 1983.

Barry P. Reich, Springfield, Ohio, for defendant.

Carl E. Juergens, Springfield, Ohio, for debtor Clark.

DECLARATORY DECISION

CHARLES A. ANDERSON, Bankruptcy Judge.

PRELIMINARY PROCEDURE

These adversarial matters were combined for disposition upon request of attorneys for the parties.

At the pretrial conference, the facts were stipulated and the trial dates cancelled. Briefs were submitted in both proceedings prior to the entry on January 10, 1983, of the following order, to-wit:

This matter is an action by the Trustee for money judgment. The controversy involves application of a penalty provision under state law. The matter was submitted prior to expiration of the United States Supreme Court's stay of its opin-

ion in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), (hereinafter *Northern Pipeline*), and is presently pending for final judgment.

The proceeding is now before the Court *sua sponte* as required by law for review of this Court's jurisdiction in light of the *Northern Pipeline* decision. As elaborated in this Court's opinion in *The Schear Realty and Investment Co., Inc.,* 25 B.R. 463 (Bkrtcy.1982), the Court's jurisdiction over this type of litigation is uncertain.

To avoid undue prejudice to the litigants by further delay, the Court hereby informs the litigants that, subject to further order of the Court, no decision will be rendered in this case until Congress enacts remedial legislation as necessitated by the *Northern Pipeline* decision. The Court, however, will proceed to decision if the parties either, to the extent permitted by the Constitution, waive, by stipulation, all jurisdictional questions under *Northern Pipeline* or the *Order of the Judicial Council for the Sixth Circuit* and the *Order of the District Court of the Southern District of Ohio* pursuant thereto, or move to dismiss on the basis of a lack of jurisdiction for a determination by the Bankruptcy Court.

Subsequently, the following stipulation was filed in behalf of the litigants, to-wit:

In response to this Court's order entered January 10, 1983 the parties herein waive all jurisdictional questions arising out of the *Northern Pipeline* case, *Order for the Judicial Court Council for the Sixth Circuit* and *Order for the District Court of the Southern District of Ohio* and hereby consent to this Court proceeding to decision on the matter submitted for decision previously.

## FACTS

The operative facts in each case are fairly identical, except as to dates of the various transactions (which will be omitted herein), as follows:

The Debtors executed and delivered to Defendant Society National Bank of the Miami Valley, successor by merger to The Springfield Bank ("Society" herein), their promissory notes.

To secure the notes Debtors executed and delivered to Defendant Society installment loan disclosure statements and security agreements, granting Defendant Society a security interest in motor vehicles.

The Debtors defaulted in payment of the promissory notes according to their terms.

As a result of the defaults Defendant Society repossessed the motor vehicles.

Defendant Society mailed a notice of repossession and sale to Debtors by certified mail, which were received.

Notice of Defendant Society's sale of the motor vehicles was published in the Springfield Daily News, a paper of general circulation in Springfield and Clark County, Ohio. The publication, however, was less than ten days before the sale.

The repossessed automobiles were sold at public auction.

Defendant Society then mailed to Debtors the deficiency letters.

John R. Butz, is the duly acting Trustee in both cases having been appointed on March 19, 1982 in *Clark* and May 21, 1982 in *Latham.*

## DECISION

The facts present the question as to whether or not Defendant was required to comply with Ohio Revised Code § 1317.16 in disposing of its collateral taken by nonjudicial repossession. The Trustee urges that Defendant was thereby required to publish, "at least ten days prior to the sale, a notice of such sale listing the items to be sold, in a newspaper of general circulation in the county where the sale is to be held." The Trustee relies primarily on a previous decision by this Court in *Warren, Trustee v. The Springfield Bank (In the Matter of Bryan)* (1976) 2 B.C.D. 959, 1 B.R.W. 752. He argues, as follows:

In that case this Court analyzed the inner relationship between O.R.C. § 1309.47 and O.R.C. § 1317.16. In that case involving the repossession sale of a mobile home the Court concluded that a public sale of the mobile home as seemingly would have been required by O.R.C. § 1317.16 was not required because of the provisions of O.R.C. § 1317.01(P) which is a definition section and which specifically defined "a consumer transaction." At the time the definitional section specifically excluded the sale of motor vehicles and mobile homes from its definition of consumer transactions and for that reason the Court concluded that the requirements of O.R.C. § 1317.16 were not applicable. However, in 1977 the definition section, O.R.C. § 1317.01(P) defining consumer transaction was amended and the exceptions previously mentioned were deleted. Following the Court's rational in the above mentioned case, there seems to be no question that now a ten day notice in a paper of general circulation is a requirement of a secured party in disposition of collateral after default when the collateral is a motor vehicle such as in the case at hand.

O.R.C. § 1309.50 provides that if a secured party does not proceed in accordance with O.R.C. § 1309.44 to 1309.55 inclusive, "the debtor has a right to recover in any event an amount not less than the credit service charge plus ten percent of the principal amount of the debtor or the time price differential plus ten percent of the cash price." In the within matter the defendant clearly did not comply with O.R.C. § 1309.47 as it incorporates O.R.C. § 1317.16 and therefore, the trustee is entitled to recover a sum computed in accordance with the formula set out in O.R.C. § 1309.50.

In behalf of Defendant it is countered that, "Plaintiffs' reliance on this Court's prior decision . . . is misplaced. This Court never reached a conclusion as to whether Ohio Revised Code Chapter 1317 applied to the case under review. Rather, the Court came to its decision by applying the standards of Sections 1309.47 and 1309.50, Ohio Revised Code, to the facts of the case."

Defendant's argument is elaborated, as follows:

"1. The provisions of Chapter 1317, Ohio Revised Code, do not apply to the sale of the repossessed collateral in this action because Defendant Society National Bank of the Miami Valley (hereinafter referred to as 'Society') is not a retail seller as defined in Sections 1317.01(H) and 1317.01(I), Ohio Revised Code.

Section 1317.16(A) provided as follows:

A secured party whose security interest is taken pursuant to Section 1317.071 (1317.07.1) of the Revised Code may, after default, dispose of any or all of the collateral only as authorized by this section.

Section 3117.01.1 provides in part, as follows:

No retail seller, in connection with a retail installment contract arising out of a consumer transaction, shall take any security interest other than as authorized by this section.

'Retail seller' is defined in Section 1317.-01(I), Ohio Revised Code, as a 'seller who is a party to a retail installment sale.' 'Seller' is defined in Section 1317.01(H), Ohio Revised Code, as a 'person who sells or agrees to sell goods.' (Emphasis supplied.)

Thus, the standards of Section 1317.16 regarding disposition of collateral apply only to secured parties who are sellers in a retail installment sale. This Court has before it no fact showing that Society was a retail seller. In fact, the cars were purchased from third party car dealers, and Society merely financed the purchasers. Society did not participate in the dealings between the sellers and purchasers of the automobiles. Since, by definition, Chapter 1317 does not apply to Society as a secured creditor in these cases, Society's disposition of the repossessed collateral is governed only by section 1309.47, Ohio Revised Code.

2. The repossession sales were conducted by Society in a commercially rea-

sonable manner as required by Section 1309.47, Ohio Revised Code. The stipulated facts prove that the sale was public and that all required notices were sent to and received by the debtors. The only issue of commercial reasonableness raised by Plaintiff's Complaints involves the manner used by Society in advertising the public sale of the repossessed collateral.

Section 1309.47(C), Ohio Revised Code, which is UCC Section 9-504 as adopted by the State of Ohio, provides as follows:

(C) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent. In other cases, notification shall be sent to any other secured party from whom the secured party has received, before sending his notification to the debtor or before the debtor's renunciation of his rights, written notice of a claim of an interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale.

Although actions taken by a secured party to publicize an intended sale of repossessed collateral have been recognized as important factors to be considered along with other circumstances of the particular case in determining whether all aspects of the sale were commercially reasonable, no Ohio court has defined specifically how much notice of the sale must be given to the public. That a secured party sufficiently asvertised the sale of repossessed trucks to the public was considered by the Court, together with other circumstances, in reaching its conclusion that the secured party had complied with the commercial reasonableness standard of Section 1309.47(C) in disposing of the trucks. *Liberty Bank v. Greiner* (1978), 62 Ohio App.2d 125, 16 O Ops 3rd 291, 405 NE2d 317.

Other jurisdictions have considered the issue of sufficient advertisement more specifically in interpreting UCC Section 9-504. In *Fedders Corp. v. Taylor* (1979, DC Minn), 473 F.Supp. 961, the Court held that the secured party had acted in a commercially reasonable manner, as required by UCC Section 9-504, in disposing of collateral where the secured party published notices of public sales in newspapers at various times during the week preceding each sale. The Court noted that publication of a notice in newspapers has frequently been approved as a proper method of providing public notice of a repossession sale. In *Credit Alliance Corp. v. David O. Crump Sand & Fill Co.* (1978, SDNY), 470 F.Supp. 489, a secured creditor who advertised its intended public sale of repossessed dump trucks in newspapers three days preceding the sale was held to have complied with the commercially reasonable standard of UCC Section 9-504.

Plaintiff has presented no evidence to show that any third party was prevented from bidding on the collateral because of lack of notice of the sale, that the price received for the repossessed collateral was inadequate, that the time and place of sale were unreasonable, or that the auction sale was conducted in an unlawful manner. The facts show that Society conducted the repossession sales in a commercially reasonable manner."

■ A transaction, although subject to provisions of the Uniform Commercial Code Article 9 as adopted in Ohio, is also subject to the Ohio Retail Installment Sales Act O.R.C. §§ 1317.01–1317.99, and in the case of conflict, the provisions of the latter control. Ohio Revised Code § 1309.14(D) (UCC 9–203).

As articulated by the Trustee, the rationale of the decision by this Court in the *Bryan* case would now apply to motor vehicles because the definition of "a consumer transaction" under Revised Code § 1317.-01(P) was amended in 1977 to delete the exception of motor vehicles and mobile homes.

Nevertheless, this Court is constrained to concur with the proposition that the decision in *Bryan* does not apply under all circumstances. Although the decision of the Ohio Court of Appeals for Auglaize County in *First National Bank v. Turner,* (1981) 1 O.B.R. 463, 1 Ohio App.3d 152, 439 N.E.2d 1259 is not binding in a federal court, we find the *ratio decidendi* persuasive in part.

If the Defendant Bank had merely acted in a lending capacity, the provisions of *Revised Code Chapter 1317: Retail Installment Sales* would not be applicable. That is, there is a proper distinction to be drawn between "lenders" and "retail sellers." The *proviso* of § 1309.47(F) (added to UCC 9–504) that "This section is subject to the limitations of Section 1317.16 of the Revised Code," should not be applied to repossession sales by lending institutions *per se* and repossession sales would be governed by § 1309.47 (UCC 9–504).

■ In these instant cases, however, the Defendant was not merely a "lender." It is noted that it was also assignee or successor in interest of the automobile sales agencies contracts. In fact, the Defendant is a party to the original agreement which covenants that, "1. The Debtor will pay to the order of The Springfield Bank ... the indebtedness evidenced by the Instalment Loan Note attached thereto, herein called the 'Note,' to-wit...." The agreement also recited that the extension of credit had been arranged directly between the dealers and the Defendant Bank.

Further, even though not controlling, it must be noted that the sales agreement (Installment Loan Disclosure Statement and Security Agreement) expressly covenants that, "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the Debtor shall not exceed amounts paid by the Debtor hereunder."

This Court is constrained to believe that the protective aspects adopted by the Ohio General Assembly for "consumer transactions" cannot be avoided as to any party to the sales agreement by the fiction of an immediate assignment of the agreement to a "lender," which is in privity of contract. Hence, it is concluded on the facts that the Defendant Bank is more than a mere "lender." The Bank as assignee of a sellers' contracts would either have the option of enabling the dealer as seller to sell conformably to Ohio Revised Code §§ 1309.47 and 1317.16 or to comply itself as a party to the original agreement. Any other rationale would emasculate the intent and purpose of the Ohio Retail Sales Act as it is implemented in the ordinary course of business and the realities of the market place.

Having declared the decision of this Court, however, we are constrained to repeat a truism from *Norton Bankruptcy Law and Practice, The Aftermath of Northern Pipeline: Bankruptcy Jurisdiction Under Local Court Rule* (1983), at pages 58–59, as follows:

> Without jurisdiction—the power to speak the law—courts can do little more than make benign pronouncements. Jurisdiction of a federal court must be derived from an Act of Congress, except for those rare cases in which the Constitution itself confers jurisdiction. This principle is so strong that a federal court is presumed to be without jurisdiction unless its existence affirmatively appears.

> Waiver, consent, estoppel, passage of time and other similar equitable consider-

736

ations generally are unavailing as a source of federal judicial power to act. Further, a lack of subject matter jurisdiction may be raised at any time, even after a party's appearance and participation or on appeal, subject, however, to the principles of *res judicata* that may bar renewal of a jurisdictional challenge after jurisdiction has been adjudicated and upheld. [citation omitted]

Neither the "model" Rule, nor the emergency that it attempts to address, can by itself create judicial power. The exercise of such power would be tantamount to judicial legislation. That rule belongs to Congress. The Rule cannot do more than supply a procedure to facilitate the exercise of jurisdiction otherwise validly granted and existing. But the Rule does much more. It creates bankruptcy jurisdiction and divides it between two courts, the bankruptcy and district courts. It regulates the manner in which such jurisdiction is to be exercised after categorizing and allocating the various bankruptcy and non-bankruptcy claims for relief upon which those courts are to be pronounced judgment. It is judicial legislation.

A judgment entry journalizing the decision herein will be held under advisement pending resolution of the jurisdictional questions pertaining to Bankruptcy Court judgments until the Congress by legislation confers jurisdiction on the Bankruptcy Courts which can bear constitutional muster. If the litigants herein can reach a satisfactory settlement agreement in the interim based upon the *ratio decidendi* herein, such agreement should be reduced to writing and submitted to the Court for filing in the adversarial files.