**In re UMBLES DREW–HALE PHARMACY, INC., Debtor.**

**Bankruptcy No. 85–00126.**

United States Bankruptcy Court, N.D. Ohio, W.D.

Oct. 23, 1987.

C. Allen McConnell, Toledo, Ohio, for debtor.

Thomas R. Michalski, Toledo, Ohio, Trustee in Bankruptcy.

Verne K. Armstrong, Toledo, Ohio, for Small Business Admin.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court on Motion to Modify Claim of the Small Business Administration. Two informal Hearings were held on this matter, after which the parties agreed that the issues presented were primarily questions of law. Accordingly, the parties submitted Briefs, and the exhibits that they wished the Court to consider in reaching its decision. The Court has reviewed the Briefs and exhibits, as well as the entire record in this case.

Based on that review, and for the following reasons, the Court finds that the Motion to Modify Claim should be Denied.

### FACTS

The Debtor, Umbles Drew–Hale Pharmacy, Inc., filed a Chapter 7 petition on January 29, 1985. The Small Business Administration (hereinafter S.B.A.) was listed on the petition as a secured creditor with a claim in the amount of Seventy-five Thousand Three Hundred Sixty-eight Dollars and Twenty-eight Cents ($75,368.28). The security for the S.B.A. loan consisted of a lien against all fixtures located at the pharmacy, as well as the drugs and other inventory.

The Trustee reviewed the Debtor's petition and determined that the S.B.A. lien was substantially greater than the value of the assets. Shortly after the filing of the petition, the Trustee sent a letter to S.B.A. regarding his intention to abandon the inventory. The first meeting of creditors was held on March 6, 1985. Seven days later, S.B.A. filed a Motion for Relief from Stay and Abandonment of Personal Property. The Motion for Relief from Stay was granted on April 12, 1985.

During this time, litigation was proceeding between the State Pharmacy Board and the Debtor with respect to the revocation of its pharmacy license. The Movant, Joyce Umbles, has not controverted S.B.A.'s contention that access to the pharmacy was under the exclusive control of the State Pharmacy Board, not S.B.A. or the Trustee. Pursuant to 28 U.S.C. § 1746, the S.B.A. has filed a declaration by Dale R. Fritz, Jr., an employee of the Ohio State Board of Pharmacy. He states that the State Board of Pharmacy had the keys to the pharmacy, and prior to the conclusion of the litigation, the Board would not have allowed the sale of the pharmacy license, or the Umbles Drew–Hale Pharmacy.

The litigation with the State Pharmacy Board was not concluded until September 25, 1985.

On November 6, 1985, the S.B.A. hired RGIS Inventory Specialists (hereinafter "RGIS") to appraise the Pharmacy inventory. The RGIS inventory and appraisal indicated that the value of the saleable inventory was Fourteen Thousand Eight Hundred Thirty-two Dollars and Twenty-five Cents ($14,832.25), and that Fifty percent (50%) of the inventory would reach its expiration date between March and June of 1986.

S.B.A. contends that efforts to sell the inventory began directly after the appraisal and resulted in the January 23, 1986 offer to purchase the saleable contents of the Pharmacy for Four Thousand and Fifty Dollars ($4,050.00). That offer was subsequently accepted by S.B.A.

The affidavit of S.B.A. employee, Stephen D. Umberger, reflects some of the other difficulties encountered by S.B.A. in liquidating the pharmaceuticals. The pharmaceuticals could only be sold if they were unopened, and only to a person licensed by the Pharmacy Board. All outdated items had to be destroyed under the supervision of the Pharmacy Board. Further, none of the narcotics could be sold. S.B.A. was also faced with a rapid decline in value due to the approaching expiration dates.

The Movant argues that the collateral should be valued as of the date of the filing of the petition. Because the Debtor surrendered control of the property upon the filing of the petition, it became the duty of the Trustee to timely dispose of the property at fair market value. The Movant, Joyce Umbles, asserts that the proper value of the inventory, at the time the petition was filed, was Fifty-six Thousand Six Hundred Forty-nine Dollars and Sixty-nine Cents ($56,649.69). This figure comes from a 1984 appraisal by RGIS, and the averment that the inventory levels at the time of filing were consistent with those at the time of the appraisal in August of 1984.

S.B.A. raises several defenses which will be discussed below.

### LAW

The Movant seeks to modify S.B.A.'s claim under 11 U.S.C. § 502(a), which states:

## § 502. Allowance of claims or interests

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

S.B.A. has raised the issue of the Movant's standing to bring the Motion to modify its claim. Specifically, S.B.A. argues that the Movant is not a "party in interest" under § 502(a).

The term "party in interest" is not defined by the Bankruptcy Code. Rather, the legislative history indicates that:

"The Rules and case law will determine who is a party in interest for purposes of objection to allowance." H.R. No. 95-595, 95th Cong., 1st Sess. 352 (1977); S.Rep. No., 95-989, 95th Cong., 2d Sess. 62 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5848, 6308.

██ The courts appear to be fairly consistent in their holding that a Chapter 7 debtor is not a party in interest who may raise an objection under § 502(a). *In re Nefferdorf,* 71 B.R. 217, 219 (E.D.Pa.1984); *In re Lapointe,* 39 B.R. 80 (Bankr.W.D.Ky. 1984); *Willemain v. Kivitz,* 764 F.2d 1019, 1022 (4th Cir.1985) (dictum); *In re Silverman,* 10 B.R. 734, 735 (Bankr.S.D.N.Y. 1982), *aff'd,* 37 B.R. 200, 201 (S.D.N.Y. 1982) (Act case); *Kapp v. Naturelle, Inc.,* 611 F.2d 703, 706–707 (8th Cir.1979) (Act case); 3 *Collier on Bankruptcy* ¶ 502.01, 502–12 (15th ed. 1987).

In their pleadings, both parties have occasionally failed to distinguish between the Movant, Joyce Umbles, and the Debtor, Umbles Drew–Hale Pharmacy, Inc. Clearly, under existing case law the Debtor has no standing to object to S.B.A.'s claim. The standing of Joyce Umbles is a much more difficult question. It appears that Joyce Umbles is a guarantor, or surety, for the S.B.A. loan to the Pharmacy. It might be argued that the Movant is a creditor by virtue of her subrogation rights. Or, the Movant might be viewed as analogous to a person who is a co-guarantor with a Chapter 13 debtor. *Matter of Fox,* 64 B.R. 148 (Bankr.N.D.Ohio 1986). Accordingly, the result being the same whether or not the Court finds the Movant to have standing, the Court will assume, *arguendo,* that standing exists in this case.

Turning to the substantive issue, the Movant has asserted that S.B.A.'s claim must be valued as of the filing of the petition. Movant's Counsel argues that S.B.A. was fully apprised of the perishable nature of the collateral and failed to protect its interests, and the interests of the Movant and the Debtor. A case decided under the old Bankruptcy Act, *In re Pennyrich International,* 473 F.2d 417 (5th Cir.1973), is cited in support of the Objection to Claim. However, it appears that the Movant's position contradicts both existing case law, and the facts in this case.

The value of collateral is not necessarily permanently established at the time of the filing of the petition. No section of the Bankruptcy Code requires values to be set at the beginning of the case and remain static. 3 *Collier on Bankruptcy,* § 506.04[1] at 506–21 (15th ed. 1987). The value of collateral may vary during the course of a bankruptcy case. *In re Hemisphere Intern. Center, Inc.,* 59 B.R. 289, 293–294 (Bankr.S.D.Fla.1986).

The Movant does not state the legal basis for her Motion. It appears to be brought on general principles of equity. No specific sections of the Bankruptcy Code, or Ohio law, was referred to in the Motion to Modify Claim, or in the Brief in support of the motion. The only case cited by the Movant was decided in 1973, under the Bankruptcy Act.

S.B.A. contends that 11 U.S.C. § 506 controls in this case. However, the section cited by S.B.A. is for setting the value of secured claims, and determining the unsecured balance. It appears that the legal protection which the Movant seeks is found in O.R.C. § 1309.47(C) (U.C.C. § 9–504(3)). The Movant is arguing that the disposition of the collateral by S.B.A. was commercially unreasonable. As Movant's Brief states: "The failure to timely dispose of the inventory not only decreased the amount S.B.A. received, but also subjected the debtor's other assets to a larger deficit." This ap-

pears to be an allegation that S.B.A.'s disposition of the pharmaceuticals was not proper, and that the Movant is therefore entitled to relief from the deficiency.

Although S.B.A. did not address the commercial reasonableness of the sale under § 1309.47(C), evidence was submitted to meet the requirements of 11 U.S.C. § 506(a), which provides:

> Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property ...

The affidavits filed by S.B.A. were directed to the value and the disposition of the pharmaceuticals, both to meet the Movant's arguments under general principles of equity and to cover the requirements of § 506(a). This information provided most of the facts needed for a determination of commercial reasonableness under § 1309.47(C). The only information not available is whether S.B.A. notified the Movant of the sale of the pharmaceuticals. That issue will be discussed at the end of the Opinion.

First, it should be noted that the question of whether S.B.A. owes a duty to a guarantor to be commercially reasonable in its disposition of collateral, has been settled. In *United States v. Willis*, 593 F.2d 247, 254–257 (6th Cir.1979) the Sixth Circuit Court of Appeals ruled that the defense of a lack of commercial reasonableness was available to a guarantor. The appellant in *Willis* was the S.B.A.

The Bankruptcy Code makes it clear that Article 9 of the Uniform Commercial Code, as adopted in the relevant state, governs consensual liens in personal property and fixtures. *Leasing Serv. Corp. v. First Tenn. Bank Nat. Ass'n.*, 826 F.2d 434, 437 (6th Cir.1987). O.R.C. 1309.47(C) states in pertinent part:

> (C) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place, and terms

must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor if he has not signed after default a statement renouncing or modifying his right to notification of sale....

■ A commercially reasonable sale is tested by the procedures employed for the sale, rather than simply by the proceeds received. *Leasing Serv. Corp. v. First Tenn. Bank Nat. Ass'n.*, *supra* at 439. The raising of the defense of commercial reasonableness has the effect of shifting the burden of proof on this issue to the secured party to show that the disposition was appropriate. *United States v. Willis*, *supra* at 258; *First Nat. Bank v. Turner*, 1 Ohio App.3d 152, 155, 439 N.E.2d 1259, 1263, (1981); Annotation, *Uniform Commercial Code: Burden of Proof as to Commercially Reasonable Disposition of Collateral*, 59 A.L.R.3d 369, 378–380 (1974).

■ In the present case, it appears that the disposition of the collateral was commercially reasonable. The pharmaceuticals were not available for sale until the litigation between the Debtor and the Pharmacy Board was concluded on September 25, 1985. Until that time, the pharmaceuticals were under the control of the Pharmacy Board and could not be sold. The Court cannot require that a creditor do the impossible simply to be commercially reasonable. S.B.A. was not involved in the litigation, and contrary to Movant's assertions, it does not appear that they could have done anything to protect themselves, other than discontinue all loans to pharmacies.

No evidence was presented by either party as to when the S.B.A. actually received notice that the litigation had been concluded. The S.B.A. submitted evidence that they hired an appraiser, RGIS Inventory Specialists, and had the collateral invento-

ried and prepared for sale. The appraisal took place on November 6, 1985. Presumably, S.B.A. had to coordinate their efforts with the Pharmacy Board, first to gain access, and then to work out the ground rules for a proper sale under Ohio law.

Two months after the appraisal, the S.B.A. entered into negotiations with the party who ultimately became the purchaser of the pharmaceuticals. It must be remembered that the collateral could only be purchased by a person licensed and approved by the Pharmacy Board. The offer which S.B.A. subsequently accepted, was made on January 23, 1986. The pharmaceuticals were sold for Four Thousand Fifty Dollars ($4,050.00), approximately half the appraised value of the drugs which did not expire in March or June of 1986.

In reviewing the actions taken by S.B.A., the Court finds that they acted in good faith and with due diligence in selling collateral which was continuing to decline in value as time progressed.

There can be no inference that a public sale is inherently more reasonable than a private sale. In *United States v. Willis*, *supra* at 258–259, the Court held that a *public sale* by S.B.A. was commercially unreasonable under the circumstances. In this case, it appears that S.B.A. did not want to have more time go by while they were advertising a public sale. The expiration dates were approaching. Moreover, the inventory was appraised as having a fairly low value. Any expenses would come out of the proceeds under O.R.C. 1309.47(A)(1), and would not operate to reduce the deficiency. Therefore, the Court must conclude that the S.B.A. has met its burden of proof, through the affidavits submitted, that the sale of the pharmaceuticals was commercially reasonable, conducted in good faith and with due diligence.

The last issue that warrants discussion is the possible lack of notice of the sale to the Movant. There is no evidence before the Court as to whether the S.B.A. notified the Movant of the sale pursuant to § 1309.47(C). Cases have held that when a creditor does not comply with the statutory notice requirements, the creditor may lose its right to a deficiency judgment, even though the disposition of the collateral was otherwise commercially reasonable. *Liberty Nat. Bank of Fremont v. Greiner* 62 Ohio App.2d 125, 16 O.O.3d 291, 405 N.E.2d 317 (1978). However, the statute provides a specific exception to the noticing requirement which appears to be applicable in this fact situation.

The statute, 1309.74(C), states that notice is to be given "[u]nless the collateral is perishable or declining in value ...". In the present case, the expiration dates of the pharmaceuticals were approaching. Half the drugs were to expire in March or June of 1986. Presumably, any purchaser would need time in order to retail the pharmaceuticals, and the law requires that any unsold pharmaceuticals be destroyed when the expiration date is reached. Thus, it appears that the pharmaceuticals were perishable and rapidly declining in value. Moreover, the policy underlying the notice requirement is stated in note 5 of the official comments to 9–504:

> ..."Reasonable notification" is not defined in this Article; at a minimum it must be sent in such time that persons entitled to receive it will have sufficient time to take appropriate steps to protect their interests by taking part in the sale or other disposition if they so desire.

In the present case, the Movant could not have protected her interests by participating in the sale because the Movant was not licensed at the time of the sale, and was therefore prohibited from purchasing the collateral.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

ORDERED that the Motion to Modify Claim of the Small Business Administration be, and is hereby, DENIED.