BERNARD BODNER et al., Plaintiffs, *v.* HERMAN L. BRICKNER et al., Appellants; COMPUTER REALTY CORP. et al., Respondents-Appellants; O. H. TALMUD MARUBA, INC., et al., Respondents.

First Department, March 21, 1968.

442

*William L. Messing* of counsel (*McLaughlin, Fougner & Messing,* attorneys), for Herman L. Brickner and another, appellants.

*Bernard J. Meislin* of counsel (*Benjamin Massey,* attorney), for Computer Realty Corp., respondent-appellant.

*John F. X. Hassett* of counsel (*Henry N. Rapaport* with him on the brief; *Rapaport Brothers,* attorneys), for Stella Fread, respondent.

*Irwin Heimowitz* of counsel (*Fischer, Heimowitz & Rosenberg,* attorneys), for O. H. Talmud Maruba, Inc., respondent.

STEUER, J. This is a surplus money proceeding following the foreclosure of a mortgage. The property in question is located at 3500 Hull Avenue, The Bronx, and has been referred to as the Hull Avenue property. · Six parties appeared in the surplus money proceedings. Of these the claim of Irving Rapaport is undisputed. The claim of Computer Realty Corp., the former owner of the property, is only to any balance that may be left after disposition of the other claims. The claims of Urban Electrical Contractors, Inc. and O. H. Talmud Maruba, Inc. rest on uncontested facts as to amount and validity and the only question concerns their priority.

As to the contested claims of Stella Fread and Brickner and Feinstein (hereinafter Brickner), we find no error in regard to the Fread claim and, both as to principal and interest, we affirm the disposition made by Special Term. It is otherwise as regards the Brickner claim.

It appears that one Victor Goldfarb had control of several properties, mostly in Bronx County. All of these were owned by separate corporations, of which Goldfarb owned all of the stock in some instances, and in others practically all of it. He was also the executive officer of the corporations, and without complaint or opposition dealt with them as if they were his individual properties. In accord with this practice Brickner made a loan to Goldfarb on the security of five parcels — 3220 Avenue H, 441 Ocean Parkway, and three additional parcels, which were called the Sunnyside Property. In June, 1964 there was $298,000 due on this mortgage, which has been called "the blanket mortgage". Goldfarb being desirous of withdrawing the Sunnyside Property from the lien of the blanket mortgage, an agreement between Brickner and Goldfarb (through the media of the affected corporations), called here "the spreader agreement", was entered into. By its terms, the Sunnyside Property was released from the lien of the mortgage; $55,000 was paid to Brickner in reduction of the mortgage; and Computer Corporation agreed to subject its property, the Hull Avenue property, to the lien of the mortgage, subject to existing mortgages and with permission to withdraw the property upon demand of the corporation and the payment of $50,000. The Referee reported that there was valid consideration for Computer's so doing, though concededly Computer received nothing in this transac-

tion. The basis for the finding was that Computer was one of the interlocking corporations in the Goldfarb complex. If it was, there can be no doubt that though the consideration moved to other corporations in the complex the validity of the mortgage would not be affected (*Janoff* v. *Sheepshead Towers* 22 A D 2d 950, affd. 16 N Y 2d 949). But we do not find in the record sufficient to justify such a finding. It is true that Goldfarb was at the time president of Computer and, as such, executed the agreement. However, there were substantial stockholdings in Computer other than Goldfarb's, and there is considerable dispute, plus the presence of facts, casting doubt on whether Computer's interest in the complex was similar to that of the other Goldfarb corporations, and whether there was consent to participate in the general Goldfarb operations or this particular transaction. We find an issue on this score upon which the record does not supply a basis for considered resolution.

Special Term and the Referee apparently found no necessity to explore this question in any depth because the conclusion was reached that Brickner had no right to any part of the surplus moneys for other, additional reasons. The basis of this is that after execution of the spreader agreement there was a default on the blanket mortgage. Brickner started foreclosure proceedings, naming as defendants all of the owners of the three properties then standing as security for the mortgage. This foreclosure action proceeded to judgment, and sale of the two properties other than the Hull Avenue property was had pursuant to the judgment. It is conceded on the record at this time there was $163,627.05 due on the Brickner mortgage. Brickner bid in the two properties for the nominal sum of $100 each. The only proof of the value of these parcels in the record is Brickner's concession that they were worth $110,000. Assuming this to be correct, there was a deficiency of $53,627.05, but Brickner concedes that, due to the clause in the spreader agreement above referred to, it cannot claim a deficiency in connection with the Hull Avenue property of more than $50,000. Special Term found that Brickner, due to his failure to assert a claim for deficiency, is barred by section 1371 of the Real Property Actions and Proceedings Law from claiming any deficiency at all. We do not believe that this statute controls the situation.

The said section provides that, in order to obtain a deficiency judgment against the mortgagor, at the time of moving to confirm the sale of the mortgaged property and not more than 90 days from such sale, the mortgagee must apply for leave to enter a judgment for any deficiency. Failing such an application, the amount realized on the sale of the property is deemed to be full

satisfaction of the debt secured by the mortgage. It therefore follows that until there has been a sale of the property foreclosed, no application for a deficiency judgment can be entertained, and, a fortiori, the mortgagee cannot be precluded by a failure to apply for leave to enter a deficiency judgment. In the instance of a mortgage secured by more than a single parcel of property, the right to apply for a deficiency judgment arises only when all the properties subject to the mortgage lien are sold (*City Real Estate Co.* v. *Realty Constr. Corp.*, 167 Misc. 379). If the mortgagee is prevented from proceeding to sale by an intervening event, such as condemnation of the property, the failure to apply for a deficiency judgment does not prevent him from seeking recoupment of the debt from the proceeds of the property (*Matter of City of New York [Neptune Ave.]*, 271 N. Y. 331). And in the instance of multiple parcels, if sale of any parcel cannot be had, no restriction results from the failure to obtain leave to enter a deficiency judgment (*Matter of City of New York [East 29th St.]*, 273 N. Y. 62).

As it appears here that the Hull Avenue property, a part of the security for the Brickner mortgage, was not sold pursuant to the Brickner foreclosure, the preclusion provisions of section 1371 of the Real Property Actions and Proceedings Law have no application. It does not follow that, even assuming that a valid mortgage was made, the mortgagee has a clear right to proceed against the surplus moneys.

It appears that, at some stage of the Brickner foreclosure, the action was discontinued as to Computer Corporation. Brickner claims that this was done because the instant proceedings being a foreclosure of a lien senior to the Brickner mortgage would render further proceedings in his foreclosure nugatory. This contention may very well be true but the record does not disclose whether the claim has any factual basis. Not even the date of the discontinuance, nor what the situation at that time was in regard to the foreclosure giving rise to the instant proceedings, appears. Actually there is no testimony as to the circumstances of the discontinuance or what motivated it — only argument that it was justified by the instant action.

If it be assumed that this is not the fact, namely, that the discontinuance of the Brickner foreclosure action as against Computer was not induced by the instant foreclosure suit, a different question arises. That question is, where a mortgagee proceeds to realize against a part of the mortgage security, does he abandon his claim against the balance where there is no valid reason why he may not have proceeded against that balance. It does not appear that the precise question has ever arisen in this State,

but what authority there is supports the view that the failure to proceed against all the security is an abandonment of the lien on the portion omitted. (See *Matter of City of New York* [*East 29th St.*], 247 App. Div. 648, 653; revd. on other grounds 273 N. Y. 62; 3 Jones, Mortgages [8th ed.], § 1861.) It has been so held in other jurisdictions (*Mascarel* v. *Raffour,* 51 Cal. 242; *Dooly* v. *Eastman,* 28 Wash. 564). One writer analogizes the omission to splitting a cause of action with the consequence that the claim against the security omitted is waived (1 Glenn, Mortgages, p. 533). Further support for the view might be found in the history of the right to foreclose for less than the entire debt. This was denied as splitting the cause of action even where the mortgage so provided (*Bank of America Nat. Assn.* v. *Dames,* 135 Misc. 391, 393) until made permissible by statute (see *Womans Hosp.* v. *67th St. Realty Co.,* 265 N. Y. 226, 236). The principle is that a mortgage represents a single debt and a single security no matter how either may be subdivided.

It therefore appears that the Brickner claim has been disallowed for improper reasons and that the facts necessary to a valid determination have not been ascertained, nor does the record permit of an authoritative determination. An additional defense advanced by Computer, namely, payment, was properly dismissed by Special Term.

The only remaining questions concern priority as between Urban Electrical Contractors, O. H. Talmud Maruba, Inc., and such of the other claimants as have or will be found to have valid claims. The first of these claimants is such by virtue of a mechanic's lien. Priority dates from the time of filing (Lien Law, § 3). This date appears in the record. The second claimant has a vendee's lien. It contracted with Computer to buy the property in question. Computer, after receiving a down payment, was unable due to the foreclosure to convey the realty but refused to return the down payment. Claimant started an action for specific performance and filed a notice of *lis pendens* in the action. The instant foreclosure rendered the action academic except as to claimant's damages, which the Referee properly found to be the amount of the deposit plus the cost of a title search. These damages are not contested. The only question is whether the filing of the notice of *lis pendens* gives the claimant priority over subsequent mortgagees.

A vendee's lien is superior to the lien of a subsequent mortgagee, even though the contract on which it is based is not recorded, unless the mortgage is taken without notice of the lien, actual or constructive (*Cassia Corp.* v. *North Hills Holding*

*Corp.*, 278 App. Div. 960). The filing of a *lis pendens* gives constructive notice of the existence of the claim (CPLR 6501; *Ayrault* v. *Murphy*, 54 N. Y. 203).

Urban Electrical Contractor's mechanic's lien was filed May 12, 1965. The so-called spreader agreement is dated June 24, 1964. The *lis pendens* in the O. H. Talmud Maruba action was filed June 4, 1964. It therefore appears that the latter claimant has priority over the Brickner mortgage, while the mechanic's lien lienor does not.

The order of April 12, 1967, should be modified, on the law and on the facts, by deleting the provisions denying the claim of Brickner and Feinstein and remanding that claim to Special Term for further proof in accord with the foregoing opinion, and further providing that the claim of the Urban Electrical Contractors, Inc. be subordinated to any claim that Brickner and Feinstein may establish, and as so modified affirmed without costs to any party.

STEVENS, J. P., EAGER, TILZER and RABIN, JJ., concur.

Order entered on or about April 14, 1967, unanimously modified, on the law and on the facts, to the extent of deleting the provisions denying the claim of Herman L. Brickner and Bertram Feinstein and remanding that claim to Special Term for further proof in accord with the opinion of this court filed herein, and provided that the claim of Urban Electrical Contractors, Inc. be subordinated to any claim that Herman L. Brickner and Bertram Feinstein may establish, and, as so modified, affirmed without costs or disbursements to any party.