**In the Matter of Isaac SILVERMAN, Bankrupt.**

**Bankruptcy No. 77 B 2988.**

United States Bankruptcy Court, S. D. New York.

April 24, 1981.

Weil, Gotshal & Manges, New York City, for Leucadia, Inc.

Erwin L. Corwin, New York City, for bankrupt.

## DECISION ON OBJECTION TO CLAIM OF LEUCADIA, INC.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The above-named bankrupt has objected to the claim filed by Leucadia, Inc. in the amounts of $18,533,310.43 and $404,373.30. The bankrupt asserts that both amounts are secured by a single blanket consolidated mortgage held by Leucadia, who elected not to include certain mortgaged properties located in Westchester County, New York, in Leucadia's foreclosure action in the Supreme Court, New York County. The bankrupt further argues that since Leucadia "has not attempted to collect its entire debt from all the land pledged, [it] has no right to a deficiency judgment." From this position the bankrupt concludes that since Leucadia allegedly cannot obtain a deficiency judgment with respect to the omitted properties in Westchester County, it follows that these properties will be available to pay all of the unsecured creditors in full and that there will be a surplus available for the bankrupt and, hence, the bankrupt has standing to object to Leucadia's claim.

This bootstrap argument does not carry sufficient weight to support the bankrupt's standing to maintain it.

It is hornbook law that a bankrupt is restricted to objecting to creditors' claims only in cases where there is no trustee who could properly object or where a disallowance of the claim objected to would produce a surplus for the bankrupt. 3 *Collier on Bankruptcy*, ¶ 57.17, p. 276. Since there is a trustee in this case, the bankrupt asserts that he has standing because, if successful, there will be a surplus left for him.

The bankrupt had originally filed a petition for a real estate arrangement under Chapter XII of the former Bankruptcy Act on December 23, 1977, which was aborted by an adjudication in bankruptcy on May 12, 1978. Leucadia, Inc., formerly known as James Talcott, Inc., held a blanket mortgage against the bankrupt's properties in Westchester County, New York and three properties in New York City. Additionally, Leucadia also obtained by assignment from Chase Manhattan Mortgage and Realty Trust on March 4, 1975, a mortgage on the Westchester properties superior to the blanket mortgage. Leucadia's foreclosure actions in New York City and Westchester were stayed by the commencement of the Chapter XII proceeding, but were permitted to continue after the bankrupt's adjudication on May 12, 1978. A judgment of foreclosure in the principal amount of $2,537,995.78 was entered in favor of Leucadia in the Supreme Court, Westchester County, on October 25, 1978 with respect to the superior Chase Manhattan mortgage covering the Westchester properties.

Leucadia also proceeded to foreclose the blanket mortgage against the New York City properties in the Supreme Court, New York County. The complaint in that action contained two claims for relief; one claim for foreclosure of the Chase Manhattan mortgage covering the White Plains properties (which was also the subject of the judgment of foreclosure in Westchester County) and a second claim with respect to the blanket mortgage. On May 22, 1979, Leucadia obtained a judgment of foreclosure

from the Supreme Court, New York County in the principal sum of $8,974,801.05 with respect to the blanket mortgage. In this foreclosure action, Leucadia omitted from the judgment the properties in Westchester County, which were foreclosed upon under the separate and superior Chase Manhattan mortgage in Westchester County.

It is mathematically correct to conclude that the $2,537,995.78 principal amount under the assigned senior Chase Manhattan foreclosed mortgage covering the Westchester properties and the $8,974,801.05 principal amount under the foreclosed blanket mortgage, which omitted the Westchester properties, together with interest and costs do not exceed the claim that Leucadia filed in this bankruptcy case on December 4, 1978 of nearly nineteen million dollars.

In light of Leucadia's assigned mortgage covering the Westchester properties and its blanket mortgage covering all of the bankrupt's properties as security for Leucadia's claim in excess of eighteen million dollars, and coupled with the fact that this court had determined on March 31, 1978 that there was no equity for unsecured creditors in the properties subject to Leucadia's liens, the trustee in bankruptcy, who had insufficient funds to pay taxes or to maintain the mortgage payments, obtained court authorization to sell his interest to Leucadia (formerly Talcott) for $10,000 and to deliver a release to Talcott (now Leucadia) of all causes of action or defenses which the trustee might have with respect to the foreclosure actions or Leucadia's liens against the properties in question.

In view of the general release given by the trustee in bankruptcy to Leucadia, it follows that the bankrupt's standing to now object to Leucadia's proof of claim must be bottomed not on any rights available to the trustee in bankruptcy or to the creditors whom he represents, but solely on the ground that there is a surplus available to the bankrupt which he is entitled to protect. To obtain such a surplus, the bankrupt must first cause this court to reverse its unappealed order dated May 30, 1979, wherein the trustee was authorized to sell his inter-

est, if any, in the properties in question to Talcott (new Leucadia) for $10,000. In order to show that the trustee's receipt of $10,000 for what appears to be a no-asset estate should be treated as improvident, the bankrupt contends that the estate should not be regarded as penniless because the Westchester properties should really belong to the estate, and to the bankrupt to the extent of any surplus after full payment to all creditors.

As the bankrupt wends his way along the tortuous path that he has outlined to arrive at the surplus at the end of his rainbow, the bankrupt has set up a straw man in the form of a single blanket mortgage held by Leucadia, which the bankrupt then attempts to knock down with the conclusion that:

> "... when Talcott [now Leucadia] foreclosed its blanket consolidated mortgage and omitted Westchester parcels covered by the blanket consolidated mortgage from foreclosure it waived its lien on the omitted parcels and it abandoned its right to obtain a deficiency judgment. Because of the omission, Talcott [now Leucadia] is deemed to have been paid in full ...".

This position elides the point that Leucadia also holds a judgment of foreclosure on the so-called omitted Westchester properties issued by the Supreme Court in Westchester County on October 25, 1978 for the principal amount of $2,537,995.78 under the assigned Chase Manhattan mortgage, which was senior to the blanket mortgage. Hence, the May 30, 1979 order of this court, approving the trustee's sale to Leucadia, and the foreclosure judgment issued by the Supreme Court, Westchester County on October 25, 1978, both of which have not been appealed, present insurmountable stumbling blocks along the road to the so-called surplus for the bankrupt.

The bankrupt correctly notes that under the law of the State of New York, where a holder of a blanket mortgage elects to foreclose the mortgage and omits one or more subject parcels from the foreclosure the mortgagee is deemed to have waived its lien on the omitted parcels. *Bankers Trust Co. v. G. A. Equities, Inc.*, 57 A.D.2d 601, 394 N.Y.S.2d 30 (2nd Dept. 1977); *Bodner v. Brickner*, 29 A.D.2d 441, 288 N.Y.S.2d 342 (1st Dept. 1968). Thus, by omitting a portion of the mortgaged premises from the foreclosure, a New York mortgagee is precluded from obtaining a deficiency judgment against the mortgagor. See *Carmody-Wait* 2d, 92:397. The rationale for this conclusion is that the mortgagee must first resort to all of the assets available as collateral before the mortgagor can be held personally liable for any deficiency. Leucadia's omission of the Westchester properties from its foreclose under the blanket mortgage stems from the fact that it had already obtained an earlier foreclosure judgment against the Westchester properties in its foreclosure under the assigned senior Chase Manhattan mortgage on October 25, 1978. In the circumstances, Leucadia has resorted to all of the collateral available to it under the two separate mortgages. Having asserted its secured position against the Westchester properties under a senior mortgage, it cannot now be said that Leucadia's omission of such properties in its foreclosure action under a junior blanket mortgage constitutes a waiver of its lien against such properties. Leucadia exercised its secured senior's interest in the Westchester properties when the Westchester properties were sold on May 27, 1980 at the foreclosure sale held pursuant to the October 25, 1978 judgment of the Supreme Court, Westchester County. Thus Leucadia has completely exhausted all of its secured interests in the bankrupt's properties and cannot now be deprived by this bankrupt of its senior secured position recognized by the Supreme Court, Westchester County, with respect to the Westchester properties.

Accordingly, there is no merit to the bankrupt's position that there may be a surplus for this estate or that Leucadia's claim with respect to the Westchester properties should be expunged, or, more importantly, that the bankrupt has standing to object to Leucadia's claim. The bankrupt's objection is therefore dismissed.