In re Richard D. GRIBBEN a/k/a
R.D. Gribben a/k/a Richard
D. Gribben, Jr., Debtor.

Richard D. GRIBBEN,
Plaintiff–Appellee,

v.

UNITED STATES of America,
Defendant–Appellant.

Bankruptcy No. 90 B 11961.
No. 92 Civ. 1568 (PNL).
Adv. No. 91–5409A(CB).

United States District Court,
S.D. New York.

Sept. 29, 1993.

Bruce K. Bentley, Legal Services Fund, New York City (Elliot Podhorzer, of counsel), for respondent Bldg. Service 32B–J.

Mary Jo White, U.S. Atty., S.D.N.Y., New York City (Manvin S. Mayell, Asst. U.S. Atty., of counsel), for appellant United States of America.

*OPINION AND ORDER*

LEVAL, District Judge.

The United States (the defendant-appellant) appeals an order by Bankruptcy Judge Cornelius Blackshear, dated January 8, 1992, requiring the Internal Revenue Service to pay pre-petition tax refunds to debtor Richard D. Gribben (the plaintiff-appellee).

The IRS challenges the debtor's standing to bring an action for turnover under 11 U.S.C. § 542; raises a defense of sovereign immunity to debtor's demand for payment of the pre-petition tax refunds; and challenges the Bankruptcy Court's decision on the merits.

## Background

On June 21, 1990, the debtor filed a bankruptcy petition. On July 6 and 9, 1990, the debtor filed his individual federal tax returns for the 1987 and 1989 tax years, respectively, which showed that he was entitled to a refund of $944.00 for the 1987 tax year and $740.00 for the 1989 tax year. Later in July 1990, the IRS set off these refunds against the debtor's unpaid tax liability from 1984 of $1,706.52.

On August 15, 1990, the debtor filed an adversary proceeding seeking determination that his federal tax liabilities for 1984 and 1985 were dischargeable, and on January 18, 1991, the bankruptcy court signed a stipulation declaring those liabilities dischargeable.

In April 1991, the debtor instituted an adversary proceeding under 11 U.S.C. § 542(b) against the United States, seeking the turnover of his 1987 and 1989 refunds. The bankruptcy court determined that because the IRS had set off the debtor's 1987 and 1989 tax refunds against his 1984 and 1985 tax liability without first seeking relief from the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362, the IRS setoff was ineffective and void. 11 U.S.C. § 553. The bankruptcy court ruled that the intervening determination of dischargeability eliminated the IRS's claim so that setoff was no longer possible. Accordingly, Gribben was entitled to the refunds. The Government appeals.

---

1. The Government cites *In re Perkins,* 902 F.2d 1254, 1257 (7th Cir.1990); *Hanover Ins. Co. v. Tyco Indus., Inc.,* 500 F.2d 654, 656–67 (3d Cir. 1974).

2. The existence of the bankrupt's continuing interest in collecting his or her property is confirmed by the judicial gloss placed upon the Code's provision that the trustee may abandon property of the estate that is burdensome or of

## Discussion

### Standing

The Government contends that the debtor lacked standing to bring the turnover action, claiming that the right to pursue turnover under § 542(b) belongs only to the trustee in bankruptcy.

The issue of standing was not raised by the United States in the proceedings below. The Government argues that its objection to Gribben's standing was not waived, because standing goes to this court's jurisdiction to hear the case. In support of its position, the Government cites cases including *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 37, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976) and *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 260, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977), for the proposition that standing is necessary for there to be a "case or controversy" over which a federal court has jurisdiction.

The Government further argues that Gribben did not have standing to bring this turnover proceeding, pointing to provisions of the Bankruptcy Code that authorize the trustee to bring actions to collect the estate's assets, §§ 323, 524(b), and 704(a), and to case law that interprets these provisions as vesting an *exclusive* right in the trustee to bring such actions.[1]

■ There is no question that Gribben has sufficient interest in this action to have standing in the *constitutional* sense. The debtor has an interest in seeing that all his assets are collected, either because vigorous collection may result in a surplus for the debtor or because, as Gribben claims is true here, the collected assets may be exempt property that the debtor will retain if a collection action is successful.[2]

inconsequential value, 11 U.S.C. § 554. Numerous cases hold that ownership of such abandoned property reverts to the bankrupt, *e.g., Brown v. O'Keefe,* 300 U.S. 598, 602–03, 57 S.Ct. 543, 546, 81 L.Ed. 827 (1937); *Bryson v. Bank of New York,* 584 F.Supp. 1306, 1316 (S.D.N.Y. 1984), who may then pursue an action to recover it. *Id.* at 1316.

■ It may be, as the Government now argues, that the Bankruptcy Code places a *statutory* limitation on the debtor's standing to bring an action.[3] If so, this would be consistent with the Code's overall purpose of promoting an orderly collection and distribution of the bankruptcy estate. Just as the stay provision promotes orderly distribution of assets through a single bankruptcy proceeding, an assignment of the debtor's causes of action to the trustee promotes orderly collection of assets. However, this is an argument about statutory standing that does not go to the court's constitutional jurisdiction over the case, and as such, I consider it waived as to this appeal by the Government's failure to raise it in the proceedings below. In any event, the Government concedes that this defect is at worst a technicality that is easily remediable by the joinder of the trustee.

*Sovereign Immunity*

■ The Government contends that Gribben's adversary proceeding under § 542(b) in the Bankruptcy Code to set aside the offset and recover his refund is barred by sovereign immunity.

Section 7422 of the Internal Revenue Code, which provides for a taxpayer suit to recover taxes wrongfully assessed or collected, waives the Government's immunity to such actions. 26 U.S.C. § 7422; *United States v. Michel*, 282 U.S. 656, 658, 51 S.Ct. 284, 285, 75 L.Ed. 598 (1931). Gribben, however, did not bring an action under 26 U.S.C. § 7422. Instead, he sought to obtain his tax refund through a "turnover" proceeding brought under the Bankruptcy Code. He relied on 11 U.S.C. § 542(d),

which allows actions against any "entity" that owes money or property to the estate. Complaint at ¶ 11. The Bankruptcy Code, like the Internal Revenue Code, has its own waiver of sovereign immunity, contained in § 106. That statute, in relevant part, provides:

> (a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.[4]

This statute requires a comparison of the debtor's "claim" against the governmental unit with the governmental unit's "claim" against the debtor to determine whether they arose out of the same transaction or occurrence; if so, the statute waives sovereign immunity, with the obvious purpose of uniting under one roof in the Bankruptcy Court the adjudication of the debtor's mandatory counterclaim with the governmental claim asserted against it.

Here the IRS's claim is its right to offset a refund owed to the taxpayer arising out of his 1987 and 1989 returns against his 1984 and 1985 tax liability. The debtor's claim against the IRS is his challenge to the IRS's right to offset his 1987 and 1989 refunds against his 1984 and 1985 tax liability. I conclude that the debtor's claim against the IRS is the mirror image of its claim against him. I conclude that they arise "out of the same transaction or occurrence."

The Government argues that § 106(a) waives immunity only when the Govern-

---

3. The cases conflict on whether the debtor has standing under the Code. *Compare In re Depo*, 77 B.R. 381, 383 (N.D.N.Y.1987), *aff'd*, 863 F.2d 45 (2d Cir.1988) (in dicta, debtor has no standing) *with Mulligan v. Sobiech*, 131 B.R. 917, 920 (S.D.N.Y.1991) (debtor, as party in interest, has standing); *In re Silverman*, 10 B.R. 734, 735 (Bankr.S.D.N.Y.1981), *aff'd*, 37 B.R. 200 (S.D.N.Y.1982) (debtor has standing where surplus may be generated).

4. 11 U.S.C. § 106(a). Section 106 continues:
   (b) There shall be offset against an allowed claim or interest of a governmental unit any

claim against such governmental unit that is property of the estate.
   (c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—
   (1) a provision of this title that contains "creditor," "entity," or "governmental unit" applies to governmental units; and
   (2) a determination by the court of an issue arising under such a provision binds governmental units.
11 U.S.C. § 106(b)–(c).

ment has filed a proof of claim. It relies on a Supreme Court dictum from *United States v. Nordic Village,* —— U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992), which refers to "the specification in subsections [106](a) and (b) that claims against the Government will lie only when the Government has filed a proof of claim, and even then only as an offset unless the claim is a compulsory counterclaim," *id.* at ——, 112 S.Ct. at 1015. Based on this dictum the Government argues that § 106(a) operates only where the Government has asserted its claim by filing a proof of claim, and not where it has done so by exercising the right of offset. I cannot accept this dictum as controlling. *Nordic Village* involved no question or analysis of what constitutes a "claim" under §§ 106(a) or (b). *Nordic Village* involved the meaning of a different clause, § 106*(c)*. The Court concluded that § 106(c) did not waive immunity as to claims by a bankruptcy estate for money judgments against the Government, but established a waiver only as to actions for declaratory or injunctive relief. The dictum quoted by the Government certainly means that the waiver of § 106(a) applies only to cases where the Government has asserted a claim, but the statute provides no support for the proposition that the Government's claim must have been *filed as a proof of claim, with the bankruptcy court*. Neither the text of the Code, nor the purpose of § 106(a) supports so narrow a view of what constitutes a "claim." And there was no issue before the Supreme Court calling for resolution of how to decide when the Government's rights against the debtor constitute a "claim" within the meaning of § 106(a). I conclude that the Supreme Court's dictum did not intend to restrict Government claims to those filed by a proof of claim for purposes of § 106(a), a question that was not raised by the proceeding.

■ The action taken by the Government was authorized by § 553(a) of the Bankruptcy Code which under certain circumstances permits "creditors to offset a mutual debt owing by such creditor to the debtor ... against a *claim* of such creditor against the debtor...." 11 U.S.C. § 553(a). The Code thus uses the word "claim" to describe the liability owed by the debtor to the Government which becomes the subject of the offset. The definitions of the Code, contained in § 101, include for "claim" essentially "any right to payment ..." and not merely those filed as a "proof of claim." Furthermore, § 106(a) uses the word "claim" to describe both the liability owed by the debtor to the governmental unit *and the liability owed by the governmental unit to the debtor.* As to the last use, the word is clearly used with a broader meaning than that stated in the *Nordic Village* dictum.

It appears to be the purpose of § 106(a) to provide that where the Government has taken action under the provisions of the Bankruptcy Code to recover a pre-petition claim against a debtor, sovereign immunity is waived with respect to related claims of the debtor against the same governmental unit so that both sides of the mutual obligations shall be adjudicated under one roof in the Bankruptcy Court.

It is the obvious purpose of § 106 to provide that claims and related counterclaims be adjudicated together, rather than in separate courts and proceedings. This purpose would be undermined by the interpretation urged by the Government. For where the Government seeks to exercise an offset, its right to the offset would be adjudicated in the Bankruptcy Court under § 553, while the validity of the related counterclaim of the debtor would need to be adjudicated in a separate proceeding authorized by § 7422 of the Internal Revenue Code. *See Sullivan v. Town & Country Home Nursing Services, Inc. (In re Town & Country),* 963 F.2d 1146 (9th Cir. 1992) (holding that to allow Government to collect estate assets through offsetting while maintaining sovereign immunity so long as no formal proof of claim filed would "vitiate the purpose of section 106(a), which is to prevent a governmental entity from obtaining distribution from the estate without subjecting itself to claims by the debtor arising out of the same transaction or occurrence").

A recent decision in the Western District of New York, *Posey v. United States Dep't of the Treasury*, 72 A.F.T.R.2d (P–H) 5512 (W.D.N.Y.1993), concluded that a taxpayer's suit similar to Gribben's was barred by sovereign immunity. That court cited several district court decisions [5] to support its holding that sovereign immunity was waived only when the Government had filed a proof of claim. However, none of the cited cases involved affirmative Government action, under authority of the Bankruptcy Code, to take possession of the bankrupt's property such as the Government's offset under § 553(a), and they do not, in my view, compel or support the result reached in *Posey* by the Western District.

For the reasons explained above, I conclude that § 106(a) waives the Government's immunity where a bankrupt debtor taxpayer seeks a refund in circumstances where the IRS has exercised the right under § 553(a) of the Bankruptcy Code to offset that refund against other tax liabilities.

*The Bankruptcy Court's Decision on the Merits*

■ The bankruptcy court ruled as follows: it determined first that the Government's offset of Gribben's tax refund against his tax liability was void, because the offset was done without first seeking judicial relief from the automatic stay provided by § 362 of the bankruptcy code. The court then held that because a stipulation entered into between the parties stated the tax liabilities were dischargeable, the debt no longer existed and therefore could not support a future offset of the 1987 and 1989 refunds. Accordingly the court concluded that the IRS' application for relief from the stay was moot ("impossible on a go forward basis") and that the debtor was entitled to payment of his refunds.

In my view the bankruptcy judge attached incorrect significance to the stipulation entered in the case that the debt was dischargeable and therefore incorrectly concluded that relief from the stay and offset were impermissible. I conclude that the judgment must be vacated and the proceeding remanded to the bankruptcy judge.

Insofar as appears on the record made in this court, the taxpayer's liability to the IRS had not been discharged. All that had been done was the entry of a stipulation that it belonged to a class of dischargeable debt. The Bankruptcy Judge was therefore incorrect in his conclusion that the debt no longer existed and thus could not support an offset against the taxpayer's 1987 and 1989 tax refunds.

It is true that the IRS purported to accomplish the offset without first having sought judicial relief from the automatic stay provided by § 362. That justified the Bankruptcy Court in concluding that the purported offset had been ineffectual. However, when Gribben instituted the turnover proceeding for payment of his 1987 and 1989 refunds, the IRS requested relief from the stay to permit offset. This court perceives no reason why that relief should not have been granted to the IRS.

The right of offset is very much favored by the Bankruptcy Code. Section 553 of the Code provides that with specified exceptions,

> [T]his title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case. . . .

11 U.S.C. § 553

The reason that the Bankruptcy Code favors the right of offset is the anomalous unfairness, where debts are owed both ways between the debtor and the creditor, of permitting the bankrupt to collect all the debt owed to him while disallowing recogni-

---

5. The cases cited were *In re Husher*, 131 B.R. 550 (E.D.N.Y.1991) (sovereign immunity did not bar order that government return pre-petition transfer); *In re Prudential Lines, Inc.*, 79 B.R. 167 (Bankr.S.D.N.Y.1987) (no waiver where gov-ernment was merely "considering" a claim against the estate); *In re Community Hospital of Rockland County*, 5 B.R. 11, 12 (Bankr.S.D.N.Y. 1980) (no waiver where debtor merely listed government as a creditor).

tion of the bankrupt's debt to the creditor. An example makes this clear: if A owes B $100 and B owes A $100, the natural tendency is to consider them even, and fundamental fairness is offended by the proposition that B must pay to A the entire $100 while A may collect only a fraction of the $100 from B. *See Studley v. Boylston Nat'l Bank of Boston*, 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913) (right to offset is "grounded on the absurdity of making A pay B when B owes A"). To avoid this absurdity, the right to offset has been confirmed in federal bankruptcy law since 1800. *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1164–65 (2d Cir.1979); 4 Collier on Bankruptcy ¶ 553.01 (Lawrence P. King ed., 15th ed. 1981).

Were it not for the IRS's oversight in failing to request relief from the stay before setting off, there is every reason to believe it would have been entitled to offset. The Internal Revenue Code expressly permits offset,[6] and § 553 of the Bankruptcy Code expressly preserves that right, subject only to the automatic stay (and other reservations not here pertinent). The fact that the IRS made the faux pas of setting off Gribben's tax refunds against his tax liabilities before seeking relief from the stay does not seem adequate reason to deny relief now that it has been requested.

The bankruptcy judge disallowed the request on the grounds that the debt, having been discharged, no longer existed and could not be offset. However, as noted above, this debt had not been discharged, so far as the record reveals.[7] The bankrupt's debt remains extant so far as the IRS is concerned and no reason appears why the IRS should not receive permission to offset so as to avoid the unfairness that offset is designed to prevent.

■ I recognize that there may be pertinent facts not yet developed or not revealed in the record on this appeal which might affect the bankruptcy court's decision. Offset is ultimately a matter of the equitable discretion of the bankruptcy court, *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1165 (2d Cir.1979) ("Allowance or disallowance of a setoff is a decision which ultimately rests in the sound discretion of the bankruptcy court."); *Posey v. United States*, 156 B.R. 910, 915 (W.D.N.Y. 1993) ("[A]lthough setoff is a preferred remedy in the Second Circuit, it must be used permissively rather than mandatorily."). Accordingly, the court does not direct grant of the relief sought by the IRS, but merely observes that on the record forwarded to this court on appeal, it seems well justified. The issue is remanded to the bankruptcy court for consideration whether there is any proper reason to deny the IRS's application to be relieved from the stay and permitted to effect the much-favored remedy of offset. *See Bohack*, 599 F.2d at 1165.

---

**6.** "In the case of overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment...." 26 U.S.C. § 6402(a).

**7.** It is not entirely clear whether even the final discharge of the debt would bar setoff. Two sections of the Bankruptcy Code, § 553(a) (preserving setoff rights) and § 524(a)(2) (enjoining setoff of discharged debt), appear to be in conflict on this point. *Compare In re Davidovich*, 901 F.2d 1533, 1539 (10th Cir.1990); *Record Club of America, Inc., v. United Artists Records, Inc.*, 80 B.R. 271 (S.D.N.Y.1987); *Camelback Hospital, Inc. v. Buckenmaier (In re Buckenmaier)*, 127 B.R. 233, 237 (Bankr.App.Panel 9th Cir. 1991); *In re Morgan*, 77 B.R. 81, 85 (Bankr. S.D.Miss.1987); *Matter of Ford*, 35 B.R. 277 (Bankr.N.D.Ga.1983); *Slaw Constr. Corp. v.*

*Hughes Foulkrod Constr. Co. (In re Slaw Constr. Co.)*, 17 B.R. 744, 748 (Bankr.E.D.Pa.1982) (holding right to setoff survives discharge of the debt) and *Posey v. United States*, 156 B.R. at 915 (N.D.N.Y.1993); *Runnels v. IRS (In re Runnels)*, 134 B.R. 562 (Bankr.E.D.Tex.1991); *Eggemeyer v. IRS (In re Eggemeyer)*, 75 B.R. 20 (Bankr. S.D.Ill.1987); *In re Conti*, 50 B.R. 142, 149 (Bankr.E.D.Va.1985) (allowing IRS to offset pre-petition discharged debt against pre-petition tax refund) *with In re Dezarn*, 96 B.R. 93 (Bankr. E.D.Ky.1988); *In re Bagnato*, 80 B.R. 655 (Bankr.S.D.N.Y.1987); *In re Johnson*, 13 B.R. 185 (Bankr.M.D.Tenn.1981) (holding discharged debt may not be setoff) and *Rooster, Inc. v. Raphael Roy, S.R.L. (In re Rooster)*, 127 B.R. 560, 568–69 (Bankr.E.D.Pa.1991) (speculating in dicta that amendment of 11 U.S.C. § 524(a)(2) to specifically enjoin offset of discharged debts may indicate congressional intent to diminish right to offset protected in § 553).

*Conclusion*

The order of the bankruptcy court is vacated and the matter is remanded for further proceedings.

SO ORDERED: