**In re VISITING NURSE ASSOCIATION, Debtor.**

**Bankruptcy No. 93–16489 SR.**

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 6, 1995.

Frederic J. Baker, Asst. U.S. Trustee, Office of the U.S. Trustee, Philadelphia, PA.

Geri Gallagher, Haverford, PA, for debtor.

George Luskus, Jenkintown, PA, Robert W. Small, Berlinger & Small, Abington, PA, for Hajar Godwin.

## OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

### Introduction.

Before the court is the Motion of Hajar Godwin ("Godwin") seeking determination of the amount of her claim against the above Chapter 11 Debtor, Visiting Nurse Association d/b/a Home Healthcare Services of Montgomery County & Vicinity ("VNA"). Resolution of this issue requires a two part analysis. Initially, the question of the Debtors standing to oppose Godwin's claim must be addressed. Thereafter, the interplay between the Federal False Claims Act, 31 U.S.C. 3729, *et seq.*, and the limitation on claims under employment contracts, as set

forth in 11 U.S.C. 502(b)(7), must be considered.

### Factual and Procedural Background.

Prior to ceasing its operations in 1994 VNA was in the business of providing skilled home nursing care and health aides to individual patients. Many of these services were covered by the Federal Medicare Program; thus, a part of VNA's revenues consisted of Medicare reimbursement payments. VNA additionally operated primary health care facilities as a separate part of its business. At the latter facilities VNA offered Medical, dental and other services to the public.

Godwin is a former employee of VNA. On June 19, 1992, Godwin was fired for what the District Court has subsequently found to be her refusal to help her employers falsify claims for submission to Medicare. This finding arose from a lawsuit under the False Claims Act initiated against VNA by Godwin following her termination. The False Claims Act prohibits, *inter alia*, the discharge of an employee for refusal to participate in submitting false claims under the Federal Medicare Program. See 31 U.S.C. 3730(h), *Passaic Valley Sewerage Commissioners v. United States Department of Labor*, 992 F.2d 474, 478–80 (3d Cir.1993). Following a trial, the District Court, on September 15, 1993, entered judgment in favor of Godwin and against VNA in the amount of $127,532.40.

The components of this liquidated sum included:

| | | |
|---|---|---|
| A. | $124,800.00 | Twice the wages Godwin would have earned between the date of the trial and her termination. |
| B. | 2,624.00 | Unpaid wages as of the date of Godwin's termination. |
| C. | 202.40 | 10% State Statutory penalty on Component B. |
| D. | 506.00 | Liquidated damages for failure to pay wages in good faith. |

TOTAL:   $127,532.40

VNA appealed this judgment to the Third Circuit Court of Appeals and sought a stay of proceedings from the District Court.[1]  The

---

1. VNA's appeal was ultimately rejected by the    Circuit Court on September 13, 1994.

stay requested was denied, by Order dated September 30, 1993, in lieu of the posting of a bond in the amount of $300,000.00, which sum, significantly, was the amount the District Court expressed was "probably necessary to cover exposure on the judgment pending outcome of the appeal." Execution proceedings on the Judgment ensued and this Chapter 11 case followed on November 5, 1993.

VNA has scheduled Godwin's claim in the judgment amount of $127,532.40 but describes it as "disputed." Godwin, for her part, seeks allowance of her claim in the significantly higher amount of $367,217.79. In doing so, Godwin focuses, *inter alia,* on language in the District Court's Order of September 15, 1993 awarding Godwin not only judgment in the amount of $127,532.40 but also immediate reinstatement and ". . . interest on back pay, litigation costs and reasonable attorneys' fees." Godwin accordingly itemizes the components of her claim, as follows:

| | | |
|---|---|---|
| 1. | Judgment | 127,532.40 |
| 2. | Prejudgment interest on back pay portion of No. 1 | 4,284.00 |
| 3. | Reimbursable Costs | 13,118.84 |
| 4. | Twice Lost Wages Since September 15, 1993 | 105,984.00[2] |
| 5. | Post–Judgment interest on Nos. 1–4 | 8,782.17 |
| 6. | Attorneys' Fees (40% of Nos. 1–4) | 103,880.56 |
| 7. | Post–Judgment interest on No. 6 | 3,635.82 |
| | TOTAL | $367,217.79 |

The question of the allowed amount of Godwin's claim is now before the Court for adjudication.

**Discussion.**

**A. Standing.**

■ Before turning to the merits of the parties' dispute there is, as noted, a threshold challenge by Godwin to VNA's standing to oppose Godwin's claim. This challenge is premised on the theory that, because VNA has ceased operations and contemplates a liquidating Plan of Reorganization, only VNA's creditors now have a stake in the

wind-up of VNA's affairs. In other words, if liquidation of all of VNA's assets will not produce a surplus over creditors claims, VNA, as Debtor, cannot expect to receive any distribution, and thus no longer has any financial interest in the proceeding. In support of its position, Godwin cites the Court to numerous decisions, including *In re Joseph E.R. Lapointe,* 39 B.R. 80 (Bankr.W.D.Ky. 1984); *In re Silverman,* 10 B.R. 734 (Bankr. S.D.N.Y.1981); *Willemain v. Kivitz,* 764 F.2d 1019, 1022 (4th Cir.1985); *In re Nefferdorf,* 71 B.R. 217, 219 (E.D.Pa.1984); *In re Umbles Drew–Hale Pharmacy, Inc.,* 80 B.R. 421 (Bankr. N.D. Ohio 1987); *In re Hernandez,* 131 B.R. 61 (Bankr.W.D.Texas 1991); and *In re Marcus,* 45 B.R. 338 (S.D.N.Y. 1984). These cases are generally supportive of the proposition Godwin advances, but in the end they are not persuasive. VNA, points out, accurately, that all of these decisions involved either Chapter 7 liquidation cases, or "liquidating" reorganization cases wherein there had been no Trustee appointed, but there existed the potential for a surplus to be generated above creditor claims. The instant case, similarly, is a "liquidating" reorganization case where the Debtor argues that there exists the possibility of a surplus. The Debtor, accordingly, argues that the precedents cited by Godwin are all inapposite and that it should be allowed to appear and be heard on the issue at bar. Godwin, for her part, disputes that there is any possibility of a surplus in this case pointing to the terms of the Debtor's own pending plan of reorganization which, it suggests, appear to contemplate a shortfall. Having considered the arguments of each side, the Court has concluded that the Debtor does have standing in this instance.

■ A court employs standing doctrines when it refuses to consider a legal claim on the ground that, even though the claim may be meritorious, the litigant advancing it is not properly situated to raise it before the court. The focus is on the party, not the claim itself. *In re Dykes* 10 F.3d 184 (3rd Cir.1993).

---

**2.** Godwin was never reinstated by VNA.

■ Both sides here have observed correctly that standing to object to claims in a bankruptcy case is conferred under 11 U.S.C. 502(a) on a "party in interest," including a creditor of a general partnership that is a Debtor in a case under Chapter 7 of this title. The term "party in interest," regrettably is not defined anywhere in the Bankruptcy Code or Rules. Still, it is abundantly clear from case law that the term is intended to be broadly construed to allow parties affected by Chapter 11 cases to appear and be heard. *In re Public Service Co. of New Hampshire,* 88 B.R. 546 (Bankr.D.N.H.1988). It is further clear that the question of a party's standing should be reviewed on a case by case basis. *In re Kaiser Steel Corp.,* 998 F.2d 783 (10th Cir.1993).

In this case, Godwin accurately points out that the Debtor, VNA, is in the process of a liquidation. There has been no Trustee appointed to take over the Debtor's affairs, however, nor can the Court at this juncture, declare unequivocally that the Debtor will not produce a surplus from its liquidation, particularly since its estate consists of unliquidated real property and as yet unprosecuted causes of action. It follows from this that the Court cannot, at this point, say with certainty that the Debtor is not a party which will be economically affected by the determination of Godwin's claim. Under these circumstances, a cautionary approach to the requested denial of standing, as taken by Judge Scholl In *In re Gulph Woods Corporation,* 116 B.R. 423 (Bankr.E.D.Pa. 990), seems the better course to follow. Consistent with that, the Court will dismiss the challenge to VNA's standing and turn to the merits of the Godwin claim.

**B. Merits of Godwin's Claim.**

■ VNA relies on the language of 11 U.S.C. § 502(b)(7) in support of its argument that Godwin's claim is subject to a cap. That Section provides, in pertinent part, as follows:

11 U.S.C. § 502

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in lawful currency of the United States in such amount, except to the extent that—

(7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds—

(A) the compensation provided by such contract, without acceleration, for one year following the earlier of—

(i) the date of the filing of the petition; or

(ii) the date on which the employer directed the employee to terminate; or such employee terminated, performance under such contract; plus

(B) any such unpaid compensation due under such contract, without acceleration, on the earlier of such dates; or

As can be seen, Bankruptcy Code Section 502(b)(7) limits damages from employment contracts basically to one year's salary. Most Courts which have considered this section agree it reflects congressional intent to protect the bankruptcy estate, and the claims of general unsecured creditors, from exorbitant damages from the acceleration of long term employment contracts. See e.g., *In re Murray Industries, Inc.,* 114 B.R. 749 (Bankr.M.D.Fla.1990); Aff'd 998 F.2d 1021 (11th Cir.1993). In the present context, VNA argues that Godwin, its former employee, has a claim which essentially is a claim for wages resultant from termination of employment. Thus VNA argues, it falls squarely within the parameters of 11 U.S.C. 502(b)(7) and is subject to the one year limitation rule. Applying the rule VNA arrives at an allowed claim of $52,808, as follows:

A) $23 per hour × average of 184 hours per month × 12 = $50,784.00

B) Earned but unpaid wages as of date of termination $2,024.00

TOTAL: $52,808.00

VNA, in other words, would strip from the $127,532.40 District Court Judgment in favor of Godwin all but $52,808.00, and would further reject entirely any claim for interest and

attorneys fees, neither of which are allowed under a strict application of 11 U.S.C. 502(b)(7). See: *In re Murray Industries, supra.*

Godwin, for her part argues that at this juncture she is not a wage claimant but is in truth, a simple judgment creditor. In making this argument Godwin invites the Court to disregard anything other than the language of the District Court Judgment awarding her a liquidated sum as damages, and in particular to disregard the employment relationship against which backdrop her judgment was obtained. Doing so might make it easier to allow Godwin's claim for the judgment amount of $127,534.40, however, it is difficult, to do so and at the same time properly consider that portion of Godwin's aggregate claim which represents wages unpaid since the date the District Court Judgment was entered.[3] Accordingly, this is not the approach the Court will employ. Taking the party's prior employment relationship into account, however, does not help VNA for in this Court's view it is doubtful that 11 U.S.C. 502(b)(7) was ever intended to apply to facts such as these.

VNA cites the Court to *In re Wheeling–Pittsburgh Steel Corporation,* 113 B.R. 187 (Bankr.W.D.Pa.1990), a case on which it relies heavily. In *Wheeling–Pittsburgh* a back pay award was entered by the National Labor Relations Board to an employee terminated in violation of the National Labor Relations Act. The Bankruptcy Court did hold that this award was subject to the limitations of 11 U.S.C. § 502(b)(7) saying:

> Once the NLRB has completed its determination of the amount of monetary compensation owed by the Debtor as a result of an unfair labor practice, the priority and allowability of claims resulting from an NLRB award is answered by the Bankruptcy Code. *id. @ 189.*

■ At first blush it seems appropriate to analogize the *Wheeling–Pittsburgh* rationale to the facts herein, but there is a significant distinction. In *Wheeling–Pittsburgh* there

apparently was a collective bargaining agreement, the breach of which gave rise both to the charge of an unfair labor practice and to a termination of contractual employment which implicated the provisions of 11 U.S.C. 502(b)(7). In the instant case, although Godwin worked for VNA for a number of years, Godwin appears to have been an employee-at-will. In other words, there is no evidence before the Court that a "contract" ever existed between the parties; hence, no employment contract termination damages are involved. Judge Fox has discussed a somewhat similar question, and reviewed relevant Pennsylvania law in *In re Hotstuf Foods, Inc.,* 95 B.R. 355 (Bankr.E.D.Pa.1989). There he held that an employee-at-will could have no claim for breach of an employment contract. This Court agrees. If there is no contract between the parties from which contract termination damages can flow, it follows that the provisions of 11 U.S.C. 502(b)(7) are not implicated. This conclusion, the Court notes, comports also with that body of case law which suggests that acceleration of damages under longer term employment contracts (i.e., those in excess of one year) is the problem to which 11 U.S.C. § 502(b)(7) speaks. Having so concluded, the Court will not apply Section 11 U.S.C. 507(b)(7) of the Bankruptcy Code to cap Godwin's claim.

There is admittedly little law on the precise issue before the court. Neither party has been able to locate a case directly on point, nor has the Court's own research identified one. It is of some comfort, therefore, for the court to be able to indicate that there is yet another alternative basis on which this Court would probably arrive at the same result.

Specifically, Godwin argues that the monetary award in issue is mischaracterized as "wages." The award in question, Godwin argues, represents her damages for VNA's violation of the False Claims Act. Her wage rate while employed by VNA, she maintains, is merely the "yardstick" used to calculate certain parts of her damages. Other compo-

---

3. Other courts having similar invitations have declined them. In *In re Holm,* 931 F.2d 620 (9th Cir.1991), the Ninth Circuit "looked behind" a judgment creditors claim upon the instance of a

502(b)(7) challenge but upheld the claim after determining that the employee's judgment had been presented to a jury on tort theories and not contract claims.

nents of the award, she argues, such as interest and attorneys fees, have not even that tangential relationship. VNA, on the other hand, insists that "wages are wages are wages," and urges that the entire award to Godwin be viewed in that manner. Even if the provisions of 11 U.S.C. 507(b)(7) were viewed by this Court as applicable, it is unlikely that the Court would accept VNA's argument.

A claim such as Godwin's is neither fish nor fowl. Indeed, it arises from a litigation wherein Godwin was a *qui tam* plaintiff suing on behalf of the United States as well as herself. Under these circumstances, it is inappropriate to simply treat Godwin's claim as a garden variety claim for back pay, at least insofar as the extra year of pay provided for under 31 U.S.C. 3730(h) is concerned, for if this component of her award is not, strictly speaking, an assessment of punitive damages, it is clearly in the nature of an exemplary award. Similarly, the assessment of attorneys fees is certainly, at least to some degree, recompense for Godwin's vindication of the public rights and not just her own interests.

Drawing the foregoing conclusions, the Court notes, is consistent with that body of case law which suggests that the provisions of the False Claims Act should be liberally interpreted to accomplish its goals. *Passaic Valley, supra.* See, also, *Neal v. Honeywell, Inc.,* 826 F.Supp. 266 (N.D.Ill.1993). The Court notes, likewise, that in furtherance of just this concept the United States of America has submitted a brief statement in support of Godwin's claim indicating therein its belief that denial of her claim would have "a significant deleterious impact on the False Claims Act and its *qui tam* provisions ..." If the Court's holding herein in fact represents a "liberal" interpretation of the provisions of the False Claims Act, the Court unhesitantly adopts that interpretation, particularly where, as here, it may advance the policies which underpin that False Claims Act without causing any perceived adverse impact upon the policies which underpin the provisions of 11 U.S.C. § 502(b)(7).

 The Court accordingly will allow Godwin's claim in the amount of $213,683.55, calculated, as follows:

| | | |
|---|---|---:|
| 1. | Judgment | 127,532.40 |
| 2. | Prejudgment interest on back pay portion of No. 1 | 4,284.00 |
| 3. | Reimbursable Costs | 13,118.84 |
| 4. | Lost Wages Period 9–15–93 through Bankruptcy[4] filing date 11–5–93 $\dfrac{50 \text{ days}}{365 \text{ days}} \times 50,784.00 =$ | 6,906.62 |
| 5. | Post–Judgment interest A) $127,532.40 @ 6% for 50 days (9–15–93 through 11–5–93) = | 1,048.20 |
| | B) $6,906.62 @ 6% for 50 days = | 56.75 |
| 6. | Attorneys Fees (40% of Nos. 1–4) | 60,736.74 |
| 7. | ELIMINATED | |
| | **TOTAL** | **$213,683.55** |

---

4. The Court holds that any entitlement to post-petition reinstatement pay and post-judgment interest terminates as of the Bankruptcy filing date.

See 11 U.S.C. § 502(b) [directing the Court to determine the amount of claims as of the date of the filing of the Petition.]